UNITED STATES *v.* MATTHEWS.

*(Circuit Court, D. Maryland. August 6, 1888.)*

1. POST-OFFICE—LARCENY FROM MAILS—WHAT CONSTITUTES.
   It is essential to the conviction of a postal employe, under section 5467 of the Revised Statutes, for the offense of secreting, embezzling, and destroying a letter intrusted to him, or which came into his possession, that such letter "was intended to be conveyed by mail," or carried or delivered by a mail-carrier, mail-messenger, route-agent, letter-carrier, or other person employed in a department of the postal service, or forwarded through or delivered from some post-office or branch post-office established by authority of the postmaster general.

2. SAME—LETTER INTENDED TO BE CONVEYED BY MAIL.
   A letter intended to be conveyed by mail is one which is intrusted to, or comes to the possession of, some postal employe, to be transmitted, by means of the mail or mail agencies of the United States, to the person to whom, under whatever name, it is addressed; or, which is the same thing, to some person authorized to receive it, from the mail, before or after it reaches the particular place to which it is directed.

3. SAME.
   A letter is not intended to be conveyed by mail, within the meaning of the statute, when the postal authorities, acting in co-operation with the sender, intend, after the letter is put in the mail, to resume possession of it themselves, or to permit the sender to do so, before the letter reaches the hands of some carrier, messenger, or other postal employe, for delivery to the proper person.

4. SAME—EVIDENCE.
   Section 5468, providing that the fact that any letter has been deposited in the post-office shall be evidence that the letter "was intended to be conveyed by mail," does not make such deposit conclusive evidence of that fact.

Appeal from district court.

HARLAN, Justice, *(orally.)* The defendant, a substitute clerk in the post-office at Baltimore, was indicted in the district court for the offense

of having secreted, embezzled, and destroyed a letter containing United States notes of the value of seven dollars, which was addressed to Henry Waidner, Baltimore, Md., and "was intended to be conveyed by mail;" said letter having come into his possession in his capacity as such clerk, and "had not then and there been delivered to the person to whom the same was addressed." He was also indicted, in the same court, for the offense of having feloniously stolen and taken said bank-notes, the property of one William B. Smith, out of the said letter, which, having been mailed in the Baltimore post-office, "was then and there intended to be conveyed by mail from the said post-office to the said Henry Waidner, at Baltimore." The first indictment is based upon that part of section 5467 of the Revised Statutes which provides that "any person employed in any department of the postal service who shall secrete, embezzle, or destroy any letter, packet, bag, or mail of letters intrusted to him, or which shall come into his possession, and which was intended to be conveyed by mail, or carried or delivered by any mail carrier, mail messenger, route agent, letter carrier, or other person employed in any department of the postal service, or forwarded through or delivered from any post-office or branch post-office established by authority of the postmaster general, and which shall contain any note, bond, draft, check, warrant, revenue stamp, postage stamp, stamped envelope, postal-card, money order, certificate of stock, or other pecuniary obligation or security of the government, or of any officer or fiscal agent thereof, of any description whatever; any bank-note, * * * shall be punished," etc. Upon that indictment, the defendant was found guilty, with a recommendation of mercy to the court, and sentenced to be imprisoned, at hard labor, for two years, in the penitentiary. The second indictment was based upon the latter part of the same section, providing that "any such person who shall steal or take any of the things aforesaid out of any letter, packet, bag, or mail of letters which shall have come into his possession, either in the regular course of his official duties or in any other manner whatever, and provided the same shall not have been delivered to the party to whom it is directed, shall be punished," etc. Upon the latter indictment the defendant was acquitted. A motion for a new trial under the first indictment having been overruled, that case has been brought here upon writ of error. It has been fully heard upon the questions of law presented by a bill of exceptions, embodying all the instructions to the jury which were asked and refused or granted, as well as the facts which the evidence tended to establish.

It appears—using substantially the words of the bill of exceptions—that the accused was a substitute clerk in the city division of the Baltimore post-office. It was his duty, in connection with other persons, to back letters with the date of their being received in the post-office, and to cancel stamps on letters. In his division were three tables parallel with each other, namely, the dumping, backing, and canceling tables. The course of business was to empty all mail pouches, together with the letters for the city of Baltimore collected from the street-boxes and the various receptacles at the post-office, upon the dumping table, from which

they were transferred to the backing or canceling table, as the nature of the letter required, to be backed or canceled by the defendant and those with whom he was working.   The letters were then collected and taken to the files of the carriers for distribution.   For a few months prior to the defendant's appointment, complaints were received at the postal inspector's office at Washington of the loss of letters in the Baltimore office. The inspector, having come to Baltimore for the purpose of investigating such losses, saw the defendant, February 3, 1887, take a letter from the mail he was backing, and put it in his pocket.   Why he was not immediately arrested does not appear; but it was then determined to test him by decoy letters.   Accordingly, February 7, 1887, five letters of that character, with the stamps canceled, and with the consent of the postmaster, were given to David Cowan, Jr., a postal clerk in the Baltimore office, having charge of the corps of employes in which the accused worked, and being the person in authority in the post-office during the hours when the defendant was at work.   Cowan was instructed to put these decoy letters among a mail of letters which would come to the defendant's hands on the backing table, when the latter should be there working.   In accordance with these instructions, Cowan took the letters inside the post-office, and put them on the dumping table among the letters of a mail which had just been dumped on the table from the mail-pouches in regular course of business, and then transferred all the letters from the dumping table to the backing table, where the accused was working alone.   The latter backed all the letters, including the decoy letters.   They were then collected and taken to the carriers' files, where the decoy letters were intercepted by Cowan, as previously instructed by the inspectors, and carried to the inspectors waiting on the outside.   The decoy letters were examined and found to be intact.   On the following day three of the decoy letters—one of which was addressed to Henry Waidner, a resident of Baltimore—were prepared in the same way as those thus described, and given to Cowan, by whom they were in the same manner placed among a mail of letters which he had just dumped on the dumping table, and which were then all transferred to the backing table, where the defendant was working.   The latter was seen to put one of the decoy letters into his pocket, and to go below in the basement.   When the letters were taken to the carriers' files, the one addressed to Waidner was found to be missing.   The others were intercepted by Cowan at the carriers' files, as instructed, and taken to the inspectors waiting on the outside.   The bill exceptions is silent as to whether Waidner was aware of the use of his name, and as to whether he authorized the inspector or Cowan to receive the letter addressed to him.   All of the decoy letters, if they had not been intercepted by Cowan, as the inspectors had instructed they should be, before they reached the carriers, would, in the usual course, have been delivered to the persons to whom they were addressed.   The accused was subsequently apprehended, and in his pocket-book was found the marked money described in the indictment as belonging to William B. Smith, and which had been placed by the inspectors in the Waidner decoy letter.

In conformity with the request of the United States, the court instructed the jury, among other things, that "if they find from the evidence that the letter described in the indictment in this cause was deposited in the post-office at Baltimore city by the witness Cowan, at the time and in the manner as testified to by him, and that Henry Waidner was a real person at the time of the deposit of said letter, living in Baltimore, Md., then, under the law, the said letter was intended to be conveyed by the mail of the United States, as averred in said indictment; and the fact, if they so find, that the said letter was a decoy letter, which the postal authorities intended, if they could, to intercept in its passage through the post-office, does not prevent it from being a letter intended to be conveyed by mail, or take said letter out of the protection of the laws of the United States, if the jury shall find that the said letter, if not intercepted, would, in usual course, have been delivered to the said person to whom it was addressed." This instruction—being the first prayer of the United States—was given, and the court, upon its own motion, said to the jury:

"In order to convict the prisoner, the jury must find that he was a clerk in the post-office at Baltimore, and that the letter mentioned in the indictment came into his custody and possession while in the performance of his duties as such clerk, and that the letter was intended to be conveyed by mail. As explaining what, under the law applicable to this case, is meant by a letter intended to be conveyed by mail, I give the jury the instruction contained in the first prayer of the attorney of the United States."

The court refused to grant the following, among other, prayers of the defendant:

"If the jury find from the evidence that the letter described in the indictment was not intended to be conveyed by mail, then their verdict must be for the defendant. If the jury find from the evidence that the letter described in the indictment was not intended to be conveyed by the mail from the said post-office in Baltimore to the said Henry Waidner at Baltimore, then their verdict must be for the defendant."

To the granting of the above prayers for the United States, and to the refusal of the prayers of the defendant, the latter excepted. He also excepted to the instruction given by the court upon its motion.

The accused having been acquitted of the latter offense,—probably because of some technical failure of proof as to the ownership of the money taken from the Waidner letter,—we have only to inquire whether the learned district judge properly interpreted that part of the statute which prescribes the offense charged in the first indictment. It was not disputed in argument—indeed, the instructions to the jury proceeded upon the ground—that it was not enough for the government to prove, in this case, that the accused was in the postal service, and secreted, embezzled, or destroyed the Waidner letter, after it came into his possession. Its case was not complete unless it further appeared—to use the language both of the indictment and the statute—that the letter was "intended to be conveyed by mail." It is not made by section 5467 an offense against the United States for one who happens to be in the postal service, to secrete, embezzle, or destroy a letter intrusted to him,

or coming into his possession, unless such letter was intended to be conveyed by mail, or carried or delivered by some one employed in the postal service, or forwarded through or delivered from some post-office or branch post-office established by authority of the postmaster general; for, in such case, the letter does not become a part of the mail, and the postal employe in receiving it cannot be said to be in the discharge of any duty imposed upon him by the United States. At this point much stress is laid by the representative of the government upon section 5468, which provides that "the fact that any letter, packet, bag, or mail of letters has been deposited in any post-office or branch post-office established by authority of the postmaster general, or in any other authorized depository for mail matter, or in charge of any postmaster, assistant clerk, carrier, agent, or messenger employed in any department of the postal service, shall be evidence that the same was 'intended to be conveyed by mail,' within the meaning of the two preceding sections." In behalf of the United States it is contended that the delivery of the Waidner letter to Cowan to be placed by him on the dumping table, and the placing of it among other letters coming to that table in the ordinary course of business, were made, by this section, conclusive evidence that the letter was "intended to be conveyed by mail." Such, in my opinion, is not a proper interpretation of the statute. The facts just stated were undoubtedly competent evidence to show that the letter was intended to be so conveyed, and, if there had been no other testimony bearing upon the question of intention, those facts should have been accepted as full proof that the letter was intended to be conveyed by mail. But other facts proven by the government indicated that its officers deliberately contrived and intended that the Waidner letter should not be conveyed by mail, or reach the hands of any carrier for delivery to the person to whom it was directed. The ultimate fact to be found before there could be a conviction under the charge in the indictment—namely, that the letter was intended to be conveyed by mail—was for the determination of the jury, under all the evidence, and under such instructions from the court as were necessary to guide them to a right decision. But the instruction given at the instance of the government in effect deprived the jury of the right to determine that ultimate fact; for they were instructed that, if the letter was deposited in the post-office by Cowan, at the time and in the manner testified to by him, and if Waidner was a real person, living in Baltimore, then, under the law, they must find that the letter was intended to be conveyed by mail. This was error; for, as we have seen, there was other evidence tending to show that the letter was, in fact, not intended to be so conveyed. A letter intended to be conveyed by mail is one which is intrusted to, or comes to the possession of, some postal employe to be transmitted, by means of the mail or mail agencies of the United States, to the person to whom, under whatever name, it is addressed; or, which is the same thing, to some person authorized to receive it, from the mail before or after it reaches the particular place to which it is directed. It cannot be that a letter is intended to be conveyed by mail, within the meaning of the

statute, when the postal authorities, acting in co-operation with the sender, intend, after the letter is put in the mail, to resume possession of it themselves, or to permit the sender to do so, before it reaches the hands of any carrier, messenger, or other postal employe, for delivery to the proper person.

A different interpretation of the statute is not required by any of the adjudged cases to which my attention has been called. The counsel relies with some confidence upon *U. S.* v. *Foye*, 1 Curt. 364. Foye, a mail carrier, was indicted for stealing a bank-note from a letter which the indictment charged was deposited by one Stickney in the post-office at Georgetown, Mass., addressed to John Blake, Ipswich, and "which was intended to be conveyed by post, and was then and there mailed, to be conveyed in the mail of the United States to the town of Ipswich, aforesaid." The evidence showed that one "Stickney was postmaster at Georgetown; that, in consequence of the loss of money from the mail on that route, he agreed with the postmaster at Newburyport to deposit in the mail a letter containing money, addressed to John Blake, Ipswich. If the letter should arrive safely at Newburyport, it was not to be sent on to Ipswich, but was to be returned to Stickney. In pursuance of this arrangement, this letter and money were sent, arrived safely at Newburyport, and were returned to Stickney, who, the next day, remailed the same letter, and the bag containing it was committed to the prisoner, who was the mail carrier between Georgetown and Newburyport. The letter was mailed precisely like others; that is to say, a bill was made out, containing the usual entries; this bill and the letter were inclosed in a wrapper, and the packet addressed to Ipswich, and deposited in the mail-bag with other packets." It was objected, on behalf of the accused, that the letter was not a letter intended to be conveyed by post, within the meaning of the act and of the indictment. After distinguishing the case of *Queen* v. *Rathbone*, Car. & M. 220, upon which the defense relied, and which arose under a statute of Great Britain declaring that a "post letter shall mean any letter or packet transmitted by the post, under the authority of the postmaster general," Mr. Justice CURTIS said:

"In the case at bar the only material difference between the letter stolen and any others in the same bag was that it was not intended to be sent to its address. But it was intended to be conveyed by post from Georgetown to Newburyport, and was regularly mailed for that purpose. We do not think the purpose of the writer, not to have the letter go to its apparent destination, affects its character, or prevents it from being a letter intended to be transmitted by post, or takes it out of the protection of the statute."

In the same opinion it was said to be "necessary to allege that the letter was intended to be conveyed by post." So far from that case being adverse to the views now expressed, the decision supports the conclusion reached by me; for, while Mr. Justice CURTIS says that the intention that the letter stolen by Foye should not go to its address was an immaterial circumstance, he lays stress upon the fact that it was intended to be conveyed by post from Georgetown to Newburyport, and was regularly mailed for that purpose. If it had appeared in that case

that the letter was not intended to be conveyed by post at all, it is obvious that he would have held that no conviction could be had under the charge in the indictment before him.

It is proper to say that the conclusion reached by me has not been influenced in any degree by the fact that the postal authorities, charged with the duty of ferreting out depredations upon the mail, used what are called "decoy letters." The employment of such means for the protection of the mails cannot possibly work harm to honest public servants. Neither the statute nor good morals forbids the use of decoy letters for the purpose of detecting postal thieves. My decision rests upon the ground that there was evidence tending to show that the Waidner letter was not intended to be conveyed by mail, and that the district court erred in not leaving it to the jury to determine, under all the evidence, whether it was intended to be so conveyed. The question presented is, I admit, a close one; but my best judgment favors this construction of the statute as the one most likely to give effect to the will of congress. For the reasons stated the judgment of the district court is set aside, and a new trial granted. The case will be put on the docket of the circuit court for trial at its next regular term. As the accused is in the penitentiary under the judgment of the district court, he can be brought before me upon writ of *habeas corpus*, and admitted to bail for his appearance at such term.

After the above decision was announced, the attorney for the government asked if the court had considered whether the judgment of the district court could not be sustained under section 3891 of the Revised Statutes. Mr. Justice HARLAN said that although that section had not been referred to in argument he had not overlooked it, but that it was unnecessary to decide whether a conviction could be had under that section for the offense charged in the present indictment. Even if it could, the punishment fixed by the judgment of the district court was in excess of what section 3891 authorized. Whether that section covered the case now before the court in any of its aspects could be best determined at the trial in the circuit court.