## UNITED STATES of America, Appellee,

### v.

### Jose RODRIGUEZ, Appellants.

### No. 462, Docket 79–1260.

United States Court of Appeals, Second Circuit.

Argued Nov. 15, 1979.

Decided Jan. 14, 1980.

David Seth Michaels, The Legal Aid Society, Federal Defender Services Unit, New York City, for appellant.

Mary Ellen Kris, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., for the S. D. N. Y., Howard W. Goldstein, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before KAUFMAN, Chief Judge, OAKES and SMITH, Circuit Judges.

PER CURIAM:

Appellant was tried on an indictment charging that he "did unlawfully, wilfully and knowingly embezzle a package which had come into his possession, and was intended to be conveyed by mail" in violation of 18 U.S.C. § 1709. Appellant's defense, in addition to an attack on the credibility of the Government's witnesses, was that even under the state of facts testified to by the Government witnesses, the "decoy" parcel in question either was not, or at least might not have been, "intended to be conveyed by mail," and that a critical element of the Government's case was therefore lacking. On this basis appellant requested, but was denied, a directed verdict of acquittal. For the same reason appellant objected to that portion of the charge which instructed the jury that "a test package sealed, addressed, bearing genuine postage and deposited in an area of an official United States Post Office in which mail was being processed is a package intended to be conveyed by mail for the purposes of this statute."

Appellant was a letter carrier assigned to the Knickerbocker Station at 130 East Broadway in Manhattan. At the time of his arrest he was assigned to deliver mail on Route 18, but he was also familiar with Route 2, a commercial area that includes the jewelry exchange district of Canal and Eldridge Streets in lower Manhattan. According to the testimony of the Government's witnesses, Postal Inspector Leslie Lauziere prepared a decoy package on December 5 or 6, 1978. The package con-

tained a man's watch, a concealed "Beacon Transmitter" that emitted a slow beeping signal detectable within a two-block range on radio receivers, and "paper punch cut-outs." The transmitter was designed, and wired to the package, in such a way that when the package was broken open, the beeping signal would become more rapid. The package was addressed to a non-existent firm ("NER-POP Jewelry Company") at a nonexistent address on a street in lower Manhattan on Postal Route 2. It bore as its return address an actual firm—International Gem—at the correct Manhattan address. It also bore actual postage, an insurance sticker, and a postmark.

It appears that when mail arrives at a post office, or at least the Knickerbocker Station, it is first sorted at a "paper case" that has cubicles representing each of the various delivery routes. Then letter carriers remove the mail from the cubicle corresponding to their own route and take it to their "carrier case," where they sort it according to the addresses along the route. The evidence was that the decoy package described above was given by Inspector Lauziere and his agents to a station supervisor at the Knickerbocker Station with instructions to place it on the ledge of the paper case shortly before appellant was to make his last pickup there on the way to his deliveries. Shortly thereafter, appellant came to the paper case, picked up the decoy package, looked at it, turned it face down on top of the mail he was carrying, and walked to his carrier case. He then put the parcel in his bag and left the station. With the aid of the beeper, Inspector Lauziere followed appellant to a building along appellant's delivery route, where appellant remained inside for about forty-five minutes. At this point the beeper went into the alarm mode, indicating that the package had been opened. The agents entered the building, where they found and arrested appellant.

The parties and the court below all agreed that the violation of 18 U.S.C. § 1709 charged in the indictment has four elements: that Rodriguez was a Postal Service employee, that the decoy package came into his possession, that the package was intended to be conveyed by mail, and that he embezzled it. Unfortunately for the Government, its case was complicated when Inspector Lauziere testified that "from a factual standpoint, it was never intended [that the package] be conveyed in the mails." We note that the Government laid the groundwork for this complication when it framed the indictment. Section 1709 makes it a crime for a postal employee to embezzle a letter, package, etc., "intended to be conveyed by mail, or carried or delivered by any carrier, messenger, agent, or other person employed in any department of the Postal Service . . . ." (emphasis added), and doubtless the decoy package described in the Government's testimony would have fallen within the second category here. However, we cannot affirm a conviction on the basis of what might have been, but in fact was not, in the indictment. We must therefore turn to the question whether when a decoy package is introduced into the mail by a Postal Inspector who does not intend, "from a factual standpoint," that it be conveyed in the mail, it is nevertheless a package "intended to be conveyed by mail" in the sense in which that language is used in § 1709.

The early cases construing the phrase "intended to be conveyed by mail" in the predecessor statute to 18 U.S.C. § 1709 (R.S. § 5467) are not altogether clear as to whether the requirement is a matter of the "subjective intention" of the person who introduces the letter or parcel into the mail. Analysis of these early cases is further complicated by the existence at that time of a section (R.S. § 5468) providing that "the fact that any letter . . . has been deposited in any post-office . . . or in any other authorized depository for mail matter . . . shall be evidence that the same was 'intended to be conveyed by mail' [within the meaning of R.S. § 5467]." In any event, it was held in *Scott v. United States,* 172 U.S: 343, 19 S.Ct. 209, 43 L.Ed. 471 (1899), that "[t]he intention to convey by mail is sufficiently proved in such a case as this, by evidence of the delivery of a

letter into the jurisdiction of the post office department by dropping it in a letter box as described herein." *Id.* at 350, 19 S.Ct. at 211. The opinion goes on to say that under R.S. § 5468, such a set of facts constitutes prima facie evidence of an intention to convey by mail, and that this evidence is not contradicted by evidence that the letter was a decoy, and its addressee fictitious. *Id.* The opinion is silent as to the proper effect of contrary evidence concerning the subjective state of mind of the person depositing the letter in the mail, although the Court's treatment of the fictitious addressee suggests that the depositor need not "intend" ultimate delivery.

Since the decision in *Scott*, the courts have been called upon several times to decide questions similar to the one before us now. None of these courts has concluded that *Scott* was based solely on R.S. § 5468. Some have found in *Scott* direct support for the notion that the subjective intention of the mailer is totally irrelevant. The court in *United States v. Hergenrader*, 529 F.2d 83, 84–85 (8th Cir.), *cert. denied*, 426 U.S. 923, 96 S.Ct. 2632, 49 L.Ed.2d 377 (1976), for instance, held that an "objective standard" had been adopted by the Supreme Court as to whether a letter was "intended to be conveyed by mail," citing *Scott* and *Montgomery v. United States*, 162 U.S. 410, 16 S.Ct. 797, 40 L.Ed. 1020 (1896),[1] which in turn relied upon *Goode v. United States*, 159 U.S. 663, 16 S.Ct. 136, 40 L.Ed. 297 (1895). The standard was explained in *Hergenrader* as follows: "[T]he court does not look to the intent of the person who prepared the letter but whether a reasonable person who saw the letter would think it was a letter that was intended to be delivered. It is the appearance which it carries to the

postal employee which is crucial." 529 F.2d at 85.[2] Similarly, the Fifth Circuit, in *United States v. Kent*, 449 F.2d 751, 752 (5th Cir. 1971), *cert. denied*, 405 U.S. 994, 92 S.Ct. 1268, 31 L.Ed.2d 462 (1972), after discussing *Scott* and the cases construing it, said that "[w]e entertain no doubt that the phrase 'intended to be conveyed by mail' includes all matter placed in any part of the mail handling process."

Another line of cases following *Scott* considers, and rejects, the claim that because postal inspectors intend to *intercept* a decoy letter before it reaches its addressee, or because the addressee is fictitious, the letter is not intended to be conveyed by mail. *Kelley v. United States*, 166 F.2d 343, 345 (9th Cir. 1948) (dictum); *Jarrett v. United States*, 92 F.2d 698, 699 (9th Cir. 1937); *McShann v. United States*, 231 F. 923, 925–26 (8th Cir. 1916). While these holdings are not clearly dispositive of the issue before us now, they are at least indicative of a continuing judicial reluctance to reverse convictions for postal embezzlement based on decoy letters, on the ground that they were not intended to be conveyed by mail.

Appellant directs our attention to the pre-*Scott* decision (per Harlan, J.) in *United States v. Matthews*, 35 F. 890 (C.C.D.Md. 1888). In that case, the court had instructed the jury that "if they find . . . that the letter . . . was deposited in the post-office at Baltimore city by the witness Cowan . . . then, under the law, the said letter was intended to be conveyed by the mail of the United States." *Id.* at 893. On appeal, it was held that this instruction erroneously took away from the jury an issue of fact as to whether the letter was intended to be conveyed by mail.

---

1. *Montgomery* held that the fact that letters were decoys, and bore fictitious addresses, was in itself immaterial. We find nothing in that case, however, indicating explicitly that an *objective* standard on the question of intent had been adopted.

2. This standard was, as *Hergenrader* points out, announced in *Goode v. United States*, 159 U.S. 663, 671, 16 S.Ct. 136, 40 L.Ed. 297 (1895). But there, it was announced as the standard for determining whether something was a *letter* for

the purposes of the crime defined in R.S. § 5469, the predecessor to 18 U.S.C. § 1708. It is not an element of that crime, mail theft, that the accused have been a postal employee, *or* that the stolen material have been "intended to be conveyed by mail." The *Goode* Court expressly declined to rule on the question what was meant by the phrase "intended to be conveyed by mail." 159 U.S. at 671, 16 S.Ct. at 138.

There can be no question that under *Matthews* the intent question refers to the subjective intention of the mailer. There is considerable room for doubt, however, whether the *Matthews* view can be said to have survived the Supreme Court decision in *Scott.* There is equally room for doubt as to whether *Matthews* is a fair representation of the pre-*Scott* doctrine. In *United States v. Foye*, 25 F.Cas. 1198 (C.C.D.Mass. 1853) (No. 15,157), it had already been said that "[w]e do not think the purpose of the writer, not to have the letter go to its apparent destination, affects its character, or prevents it from being a letter intended to be transmitted by post, or takes it out of the protection of the statute." *Id.* at 1199.

We note in passing that the principle stated in *Scott*, and relied on in many subsequent cases, that "[t]he difficulties of detecting this kind of crime are very great, and the statute ought not to be so construed as to substantially prevent a conviction under it," 172 U.S. at 351, 19 S.Ct. at 212, does not bear on the precise question before us. A decision in this case adverse to the Government would not interfere with the use of decoy letters in the discovery and prosecution of postal embezzlement, since as already noted indictments could be framed so as to charge the crime of embezzling a letter or package "intended to be carried or delivered by any carrier, messenger, or other person employed" by the Postal Service, still a violation of § 1709.

Nevertheless, we are not persuaded that a reversal is in order here. To reverse, we would have to hold either that the holding in *Scott* was based entirely on an interpretation of R.S. § 5468, and thus became void when that presumption statute was not recodified in 1909,[3] or else that the *Scott* holding is extremely narrow, and does not overrule the earlier holding of *Matthews.* Either course would be a clear departure from the trend we noted above in the cases since *Scott*, and we decline to depart from that trend now. *See United States v. Her-*

*genrader, supra; United States v. Kent, supra; Kelley v. United States, supra; Jarrett v. United States, supra; McShann v. United States, supra.*

For the reasons stated above, we conclude that the judgment of conviction entered by the court below ought to be, and it hereby is, affirmed.

---

3. Section 5468 was omitted from the reenacted Criminal Code. Act of March 4, 1909, Pub. L.No. 60–350, ch. 321, 35 Stat. 1088.