## SCOTT *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 80. Submitted December 5, 1898. — Decided January 3, 1899.

The plaintiff in error, defendant below, a letter carrier, upon his trial charged with purloining a letter containing money, offered himself as a witness on his own behalf, denying that he had purloined the money.

On cross-examination he said that he had enemies in the office, and named two persons. The Government called both as witnesses, and both denied that they bore ill will to him. Their evidence was objected to on the ground that the defendant's evidence on this point was collateral, brought out by cross-examination, and that the Government was bound by the answer. *Held*, that the evidence was admissible.

A decoy letter, containing money, addressed to a fictitious person, mailed for the purpose of discovering the frauds of a letter carrier, is to be treated as a real letter, intended to be conveyed by the mail, within the meaning of the statutes on that subject.

THE case is stated in the opinion.

*Mr. T. C. Campbell* for plaintiff in error.

*Mr. Assistant Attorney General Boyd* for defendants in error.

MR. JUSTICE PECKHAM delivered the opinion of the court.

Henry W. Scott, the plaintiff in error, was indicted under section 5467, Revised Statutes, for stealing a letter and its contents from the mail, and the indictment alleged that he unlawfully and wilfully secreted and embezzled a certain letter intended to be conveyed by mail and directed to Miss Mary Campbell, Cottonwood, Yavapai County, Arizona, he being a letter carrier in the city of New York and the letter having been entrusted to him and having come into his possession in his capacity as such carrier. The letter contained $3.50 in two silver certificates of the United States, each of the denomination of one dollar, and a United States Treasury note of the denomination of one dollar, and a fifty-cent piece of the silver coinage of the United States. The evidence showed that the letter was what is termed a decoy letter; that the money was placed therein by one of the inspectors of the Post Office Department; that it was sealed, stamped and addressed as above mentioned, and deposited about 2.30 o'clock P.M. in one of the street letter boxes in the city of New York, in the district from which the defendant collected such letters. Within a few moments after it was deposited in the letter box by the inspector, he saw the defendant come to the box, un-

lock it, take out its contents, put them in his bag and continue on his route. The carrier returned to the branch post office, station E, where he was employed, a little after three o'clock, turned the contents of his bag upon the proper table for distribution, and hung the bag and also his coat on a peg, and left the room and was gone about half an hour. One of the clerks of the department had been told before the defendant's arrival with his letter bag to look out for a letter addressed, as above described, and withdraw it from the mail, and in obedience to such instructions and during the defendant's absence he looked through the letters thus taken from his bag, and the letter was not to be found. Upon the defendant's return to the distributing room, he took his coat and bag and started on his route for another collection of letters, and while on the street he was met by the officers of the Government about five minutes after four o'clock P.M., and was then arrested and brought to the station. He was charged with having the letter, and was asked to show what he had in his pockets. The letter was not found, but the defendant took from his right-hand trousers pocket, among other things, the three bills which had been placed in the letter. The fifty-cent piece was found loose among other coins in another pocket. The officers identified the bills by marks which had been placed on them, and also by reason of the numbers of the bills, a memorandum of which had been taken. The coin had been marked and was identified by the officers.

In relation to the letter, it appears that it was prepared by an inspector of the department, who addressed the same to Miss Mary Campbell. The inspector wrote the body of the original letter. He did not know Mary Campbell, and never saw her; it was addressed to her at Cottonwood, Arizona, at which place there is a post office, but there was no one of the name of Miss Mary Campbell residing at Cottonwood, Arizona, to his knowledge. The address on the letter was to a fictitious person; the money placed in the letter was the money of Mr. Morris, one of the inspectors.

Upon the trial the defendant was sworn in his own behalf, and upon his direct examination testified that when he was

arrested and the money found upon him, he said to the inspectors, "Somebody has done me a dirty trick;" to which one of the inspectors replied, "Do you think I am concerned in that?" The defendant says that he answered him, "I did not think or did not know whether he was; but if he was not, some enemy of mine in that office was." He denied, on the witness stand, that he abstracted, or took from the collection table, or at all, any letter such as is described in the indictment, or any money belonging to any other person in the world.

Upon cross-examination the district attorney endeavored to obtain a fuller statement from the defendant as to what he meant when he said on his direct examination that somebody had done him a dirty trick, and that some enemy of his in the office was concerned in it, and to that end the district attorney asked him: "Have you any enemies among the employés at that station?" and the defendant answered that he had one by the name of Augustus Weisner and another named John D. Silsbee, his former superintendent; that he was an enemy of his and so was Weisner, and that those two were all that he regarded as enemies in that office, both being employed in the same branch office as the defendant, and he said that for a month before he was arrested he was not on speaking terms with Weisner.

The court asked the defendant: "What is the trick that you mean to suggest to the jury that was played upon you?" and the defendant answered: "The only solution that I can give of it is that that two dollars had been abstracted from my pocket and these marked three dollars put in the place of it. Three dollars and a half placed there; fifty cents in with this change." The witness had just previously stated that he left two one-dollar bills belonging to himself in his coat pocket at the time he hung his coat upon the peg in the sorting room and left it there to go down stairs, and from which room he was absent about twenty-five minutes.

When the defendant rested the Government called as witnesses John D. Silsbee and Augustus Weisner, the two men named by the defendant as his enemies, both of whom testi-

fied, under the objection and exception of defendant's counsel, that they had no ill will whatever towards the defendant, and that they had never had any quarrels with him, and Weisner said, on the contrary, that he had liked the man. The counsel for the defendant objected to this testimony on the ground that the evidence of the defendant upon this subject was collateral, brought out by the Government on his cross-examination, and that the Government was bound by his answers.

After the evidence was all in the counsel for the defendant requested the court to charge, " That a letter intended to be conveyed by mail, under the statute, must be addressed to an existing person, at an existing place, or to a real and genuine address." The court refused so to charge, and the defendant excepted.

The defendant's counsel further requested the court to charge, " That a letter with an impossible address, which can never be delivered and which the sender, acting conjointly with post office officials, determined should be intercepted in the mail, is not such a letter as was, in the meaning of the statute, ' intended to be conveyed by mail.' " This was also refused, and an exception to such refusal taken by defendant's counsel.

The jury having convicted the defendant, he has brought the case here by writ of error.

Regarding the objections taken by the defendant to the evidence of Silsbee and Weisner, above alluded to, we think they were properly overruled. The evidence objected to was not irrelevant, and the Government was not bound by the answers of the defendant as to Silsbee and Weisner being his enemies. When arrested the defendant had upon his person the three bills and the fifty-cent piece which had been marked by the post office inspectors and placed in the letter and deposited in the letter box, addressed as stated. Appreciating his position, the defendant endeavored then and there to account for his possession of the money, and he accounted for it by saying that some one, some enemy of his at the office, had done him a dirty trick, by which, as he testified, he meant to say that some one had deposited that money in

his coat pocket while his coat hung up in the sorting room, and while he was absent from that room. This evidence of defendant was an attempt to raise a suspicion, at least, that some enemy of his in the building had placed this money in his coat, and thereby to relieve himself from the suspicion of having stolen it and to show his own innocence. It was an attempt at an explanation showing an honest possession of the money. It was therefore admissible, upon cross-examination, for the purpose of showing the improbability of the explanation, to obtain from the witness all the circumstances which might throw light upon the subject. For that purpose he was asked if he had any enemies in the department, and he said that he had, naming two employés at this particular station, one the superintendent and the other a fellow letter carrier.

If this were true, it might have been argued to the jury that the explanation of defendant was strengthened, and the inference that one or both of these enemies had done this trick might for that reason have been maintained with more plausibility. To show that no such inference could properly be drawn, the Government proved that the men the defendant named as enemies were not such in fact. The evidence was not collateral to the main issue of guilt or innocence, nor was the subject first drawn out by the Government. The district attorney on the cross-examination simply obtained the names of those upon whom the defendant attempted to cast a suspicion by his statement in chief. He could not escape from the possibility of being contradicted, by the failure to name the enemies on his direct examination. That examination suggested an explanation which, if believed, showed an innocent possession, and however improbable it was, the Government had the right to pursue the subject and to show that it was unfounded. The objection to the evidence cannot therefore be sustained.

We think the court below was also right in its refusal to charge as above requested regarding the decoy letter. The correctness of the ruling has in substance been already upheld in this court.

In *Montgomery* v. *United States*, 162 U. S. 410, we not only decided that, upon an indictment against a letter carrier, charged with secreting, etc., a letter containing money in United States currency, the fact that the letter was a decoy was no defence, but it was also held that the further fact that the decoy letters (mentioned in the case) and the moneys enclosed therein, although belonging to the inspectors who mailed them and by whom they were to be intercepted and to be withdrawn from the mails before they reached the persons to whom they were addressed, was no defence, and that such letters were in reality intended to be conveyed by mail within the meaning of the statute on that subject. In that case the court, speaking through Mr. Justice Shiras, said:

"Error was likewise assigned to the refusal of the court to charge that there was a fatal variance between the indictment and proof in respect to the description of the letters, for the stealing or embezzling of which the defendant was indicted.

"In the indictment it was averred that the letters in question had come into the defendant's possession as a railway postal clerk, *to be conveyed by mail*, and to be delivered to the persons addressed. It was disclosed by the evidence that the letters and money thus mailed belonged to the inspectors who mailed them, and were to be intercepted and withdrawn from the mails by them before they reached the persons to whom they were addressed.

"There is no merit in this assignment. The letters put in evidence corresponded, in address and contents, to the letters described in the indictment, and it made no difference, with respect to the duty of the carrier, whether the letters were genuine or decoys with a fictitious address. Substantially this question was ruled in the case of *Goode* v. *United States*, above cited."

In the last cited case, which is reported in 159 U. S. 663, the court said, at p. 671, speaking through Mr. Justice Brown:

"It makes no difference, with respect to the duty of the carrier, whether the letter be genuine or a decoy, with a fictitious address. Coming into his possession, as such carrier it

is his duty to treat it for what it appears to be on its face —
a genuine communication ; to make an effort to deliver it, or,
if the address be not upon his route, to hand it to the proper
carrier, or put it into the list box.  Certainly he has no more
right to appropriate it to himself than he would have if it
were a genuine letter.   For the purposes of these sections a
letter is a writing or document, which bears the outward
semblance of a genuine communication, and comes into the
possession of the employé in the regular course of his official
business.  His duties in respect to it are not relaxed by the
fact or by his knowledge that it is not what it purports to be
— in other words, it is not for him to judge of its genuineness."

In this case, the letter was addressed, although to a fictitious
personage, yet to a post office within the Territory of Arizona.
It was properly stamped, and it was placed and came within
the jurisdiction and authority of the Post Office Department
by being dropped into a United States street letter box, in
the city of New York.  The duty of the defendant was, as
above stated, precisely the same in regard to that as to any
and all other letters that came into his possession from these
various letter boxes.  The intention to convey by mail is
sufficiently proved in such a case as this, by evidence of the
.delivery of a letter into the jurisdiction of the Post Office
Department by dropping it in a letter.box as described herein.

Section 5468, Revised Statutes, provides that the fact that
any letter has been deposited in any post office, or branch
post office, or in any authorized depository for mail matter,
etc., shall be evidence that it was intended to be conveyed by
mail, within the meaning of the two preceding sections.  This
*prima facie* evidence is not contradicted or modified by proof,
as in this case, that the letter was a decoy and addressed to
a fictitious person.  It was deposited in a proper letter box,
and it was intended that it should be taken and conveyed by
defendant, a mail carrier, and his duty as such carrier was to
convey it to the station post office, and while so being carried
it was being conveyed by mail, and was under the protection
of the Post Office Department, and its safety provided for by
the statute under consideration.  An intention to have the

letter thus conveyed by the carrier is, within the statute, an intention to have it conveyed by mail. The difficulties of detecting this kind of crime are very great, and the statute ought not to be so construed as to substantially prevent a conviction under it. A decoy letter is not subject to the criticism frequently properly made in regard to other measures sometimes resorted to, that it is placing temptation before a man and endeavoring to make him commit a crime. There is no temptation by a decoy letter. It is the same as all other letters to outward appearance, and the duty of the carrier who takes it is the same.

The fact that it is to a fictitious person is in all probability entirely unknown to the carrier, and even if known is immaterial. Indeed, if suspected by the carrier, the suspicion would cause him to exercise particular care to ensure its safety, under the belief that it was a decoy.

The other objections taken upon the trial we have examined and are of opinion they are without merit, and the judgment is therefore

*Affirmed.*