### ENNIS v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. May 30, 1907.)

No. 259.

POST OFFICE—EMBEZZLEMENT OF MAIL MATTER—DECOY LETTERS.

A post office superintendent discovered a misboxed letter, which had been placed in a "dead" pigeonhole at the top of the case, where defendant, a clerk, was engaged in sorting mail. The letter was removed by the superintendent and handed to a post office inspector, who took it to the addressee, and, without delivering it, obtained permission to open it. He then returned to the post office, unsealed the letter, and took from it an express order for $2, a statement of account, and a letter from the sender of the money order. After making a copy of the letter, he placed it in the envelope with two marked $1 bills, and forwarded the money order and the statement to the addressee. The envelope containing the letter and bills having been duly sealed was returned to the dead pigeonhole, and a short time thereafter was embezzled by defendant. Held, that the letter at the time it was returned by the inspector to the dead pigeonhole had not ceased to be mail matter, and that defendant was therefore properly convicted of embezzling a letter containing inclosures, in violation of Rev. St. § 5467 [U. S. Comp. St. 1901, p. 3691].

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Post Office, § 61.]

In Error to the Circuit Court of the United States for the Eastern District of New York.

On writ of error to the Circuit Court for the Eastern District of New York to review a judgment of conviction entered upon the verdict of a jury; the indictment charging the defendant (plaintiff in error) with having secreted, embezzled and destroyed a letter containing two silver certificates, each of the value of one dollar, in violation of the provisions of Rev. St. U. S. § 5467 [U. S. Comp. St. 1901, p. 3691].

W. L. Carey (Robert H. Roy, of counsel), for plaintiff in error.

William J. Youngs (S. B. Strong, Asst. U. S. Atty., of counsel), for the United States.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. At the time in question the defendant was a clerk in the Brooklyn Post Office, at Station D. On the 27th of March, 1906, the attention of the superintendent was called to a misboxed letter, addressed to Cowperthwait & Co., Flatbush Avenue and Fulton Street, Brooklyn, which had been placed in a "dead" pigeon hole at the top of the case where defendant worked. The letter had been postmarked

and the stamp canceled. The superintendent removed the letter from the case and handed it to Inspector Leland in the main post office building at Brooklyn. Leland took the letter to Cowperthwait & Co. and obtained permission of the treasurer to open it; he then returned to the post office, unsealed the letter, took from it an express money order for $2, a statement of account and a letter from the sender of the money order. After making a copy of the letter he replaced it in the envelope with two marked one dollar bills. The money order and the statement of account he forwarded to Cowperthwait & Co.

In the afternoon the envelope, duly sealed, containing the letter and the two bills, was placed by the superintendent in the dead pigeonhole where he had found it. A short time afterward the defendant resumed work at the case, and, as the letter was neither in the pigeonhole nor in the outgoing mail, he was questioned regarding it. Although at first he denied any knowledge of the letter he produced from his pocket, in response to a demand from the inspector, the two marked bills and subsequently admitted having taken them.

Briefly stated these are the facts; there is no dispute regarding them. No testimony was offered by the defendant.

The sole question presented is one of law which may be epitomized as follows: Was the letter in question mail matter intended to be conveyed by mail?

The argument for the defendant proceeds, we think, upon a misconception of the facts. It is insisted that the inspector delivered the letter to Cowperthwait & Co. and that thereupon it ceased to be mail matter. It is also argued that the envelope which the superintendent placed in the dead pigeonhole was not in a fit condition for mailing, for the reason that it had on it a canceled stamp and was not deposited in a place designed for matter intended to be carried by mail.

In short, the case is treated as if the first appearance of the letter was on the afternoon of the 27th when it was placed in the dead pigeonhole by the superintendent, Carroll. Here, we think, is the initial mistake which has tended to obscure the issue both in this court and in the court below. In our opinon the letter never was delivered to Cowperthwait & Co. and remained at all times in the custody and under the control of the post office officials. The inspector exhibited the letter to the treasurer of Cowperthwait & Co., but he did not deliver it to them. He obtained permission to open it and became their agent for that purpose; it was never out of his possession. It was still sealed when he returned to the post office and he opened it there.

The letter did not lose its mailable character or the protection of the laws of the United States because a part of the contents of the envelope had been removed. The only individuals who could be injured by the action of the inspector in this regard were Cowperthwait & Co. and they had given their full consent. Even if we assume that the action of the officials was illegal, the letter was still lawfully in the post office; it did not become a defenceless outlaw to be plundered with impunity by those whose duty it was to guard it. In other words, the illegal act of the inspector and superintendent, admitting it to exist, is no defense to the defendant. But, as before stated, we think these officers acted within the scope of their authority and that the letter from

the moment it entered Station D until it was embezzled by the defendant was mail matter under the protection of the law. It was intended to be conveyed by mail and would have been delivered in due course had not the defendant first secreted it and then embezzled and destroyed everything but the money it contained.

If the contention of the defendant be correct, a letter delivered at the wrong address and remailed with the canceled stamp thereon could be stolen by a person employed in the postal service without fear of punishment under section 5467, Rev. St. [U. S. Comp. St. 1901, p. 3691]. So, too, if the postmaster at the request of the sender should, after mailing, open the envelope and take therefrom a paper placed therein by mistake, the letter, after being replaced in the mail pouch, would lose the protection of the statute. Furthermore, the above contention would make the use of test letters impossible when prepared with a canceled stamp in an office other than the suspected one and subsequently placed by the inspector within reach of the distrusted official.

We cannot believe that Congress intended the section in question to have so restricted an application. On the contrary, we think it applies to all matter which lawfully comes into the possession of the department regarding which the postal authorities are required by law to exercise some act of dominion or control.

The case was submitted to the jury upon a theory more favorable to the defendant than the facts warrant. The court, upon the supposition that the replacing of the letter in the pigeonhole was the first and only mailing to be considered, left it for the jury to say whether it was "intended to be conveyed and was in the course of transmission to Cowperthwait & Co.," stating that the jury might find this issue against the United States notwithstanding the presumption allowed by section 5468.

We are convinced that no reversible error was committed at the trial. Upon the interpretation most favorable to the defendant the testimony is much stronger for the Government than in many cases in which the Supreme Court has sustained convictions.

In Montgomery v. United States, 162 U. S. 410, 16 Sup. Ct. 797, 40 L. Ed. 1020, the court said:

"The letters put in evidence correspond, in address and contents, to the letters described in the indictment, and it made no difference, with respect to the duty of the carrier, whether the letters were genuine or decoys with a fictitious address."

See, also, Scott v. U. S., 172 U. S. 343, 19 Sup. Ct. 209, 43 L. Ed. 471; Goode v. U. S., 159 U. S. 663, 16 Sup. Ct. 136, 40 L. Ed. 297.

The judgment is affirmed.