## UNITED STATES v. PERLSTEIN et al.
### No. 126–C.

District Court, D. New Jersey.

July 24, 1941.

Charles M. Phillips, U. S. Atty., of Newark, N. J., and Joseph W. Burns, Sp. Asst. U. S. Atty., of Washington, D. C., for the Government.

Paul M. Salsburg, of Atlantic City, N. J., for defendant Perlstein.

Defendant Paul, pro se.

MARIS, Circuit Judge.

After conviction and an appeal to the Circuit Court of Appeals which resulted in an order for a new trial (3 Cir., 120 F.2d 276), the defendants were convicted a second time upon an indictment which charged that from October 15, 1937, to April 16, 1940, they conspired to influence, intimidate and impede witnesses and to obstruct the due administration of justice in the District Court for the District of New Jersey and the grand jury thereof in violation of Section 135 of the Criminal Code, 18 U.S.C.A. § 241. They have now moved in arrest of judgment and for a new trial. Two grounds are urged in support of the motion in arrest of judgment. The first is that the term of service of the grand jury which found the indictment had expired before it acted and that the grand jury was, therefore, without power to act. The grand jury which returned the indictment was impaneled for the stated term of the district court which commenced at Camden on the first Tuesday in December, 1939. On January 11, 1940, an order was entered by a district judge authorizing that grand jury to continue its sessions to complete its unfinished business. The defendants were indicted on April 16, 1940.

Under Section 96 of the Judicial Code, as amended, 28 U.S.C.A. § 176, stated terms of the District Court for the District of New Jersey are held at Camden on the first Tuesday in December, at Trenton on the third Tuesday in January, at Newark on the first Tuesday in April, at Trenton on the second Tuesday in September and at Newark on the first Tuesday in November. Under the statute, therefore, the term at Camden began on December 5, 1939, at Trenton on January 16, 1940 and at Newark on April 2, 1940. Consequently before the finding of the indictment by the Camden grand jury stated terms at Trenton and Newark had intervened. The defendants contend that the term of the district court at Camden came to an end on January 16, 1940 when the Trenton term began and that the order extending the existence of the grand jury was ineffective after April 2, 1940, when the Newark term commenced.

From the time of the enactment of the Judiciary Act of 1789 until the present time Congress has treated the time of commencement of the terms of the district and former circuit courts as a proper subject for statutory regulation.[1] The time for the expiration of the terms of court has not been so treated. This is doubtless because of the fact that in the early days the business of the federal courts was light and it was more convenient to permit the judge to adjourn the term of court sine die as soon as the business pending at the place of sitting had been completed. It is clear that such an adjournment sine die brought the term at that place to an end.[2] As the business of the courts increased it became necessary, in order promptly to dispatch that business for the courts to remain in session for increasingly longer periods of time. "Term time" continuously increased and "vacation" correspondingly decreased, until, at least in this district, it came to pass that the court remained in session throughout the year. When this court was authorized by statute to sit at Newark and Camden as well as at Trenton the business of the district required the court to remain in session throughout the year at each of these places. As a result the practice of the court has been not to adjourn sine die the stated terms of court at each of the three places designated by the statute but to permit them to continue until the commencement of the next term at the same place.

---

[1] American Railroad Co. v. Castro, 204 U.S. 453, 455, 27 S.Ct. 466, 51 L.Ed. 564.

[2] Bronson v. Schulten, 104 U.S. 410, 415, 26 L.Ed. 797.

The question raised in this case is whether that practice is warranted by the law. It is settled that the beginning of a new term at the same place in the judicial district brings about the automatic ending of the prior term at that place.[3]

The question now raised, namely, whether a term of court at one place in a judicial district may continue after the beginning of a later term at another place in the district, in other words whether the beginning of a new term at one place necessarily brings to an end a prior term at another place, appears not to have been decided in this circuit. It has, however, arisen in a number of the other circuits and has claimed the attention of the Supreme Court. The conclusion has uniformly been reached that unless sooner adjourned sine die a stated term of court regularly opened at a time and place fixed by statute continues until the time fixed by law for the convening of the next term at the same place even though a term has commenced in the meantime at another place in the district. Harlan v. McGourin, 218 U.S. 442, 31 S.Ct. 44, 54 L.Ed. 1101, 21 Ann.Cas. 849, affirming Ex parte Harlan, C.C.Fla., 180 F. 119; East Tennessee Iron & Coal Co. v. Wiggin, 6 Cir., 68 F. 446; State of Florida v. Charlotte Harbor Phosphate Co., 5 Cir., 70 F. 883; Denver Live Stock Commission Co. v. Lee, 8 Cir., 18 F.2d 11; Continental Petroleum Co. v. United States, 10 Cir., 87 F.2d 91; United States v. Rasmussen, 10 Cir., 95 F.2d 842. Compare United States v. Louisville & N. R. Co., D.C.Ky., 177 F. 780.

Nothing in the language of Section 96 of the Judicial Code which regulates the times and places of holding terms of the district court in the judicial district of New Jersey requires a different conclusion. That section, as originally enacted in 1911, 36 Stat. 1119, provided for the holding of regular terms of court at Trenton only, with the right to hold court at Newark in civil causes under certain conditions. In 1913 Congress deemed it expedient to provide for the holding of regular terms of court at Newark[4] and in 1926 at Camden.[5] During the same period the number of district judges was increased from two to four and is now five. The judicial business at each of the three places fixed for holding court is ordinarily sufficient to occupy the time of at least one district judge throughout the year. It is, therefore, clearly in the public interest as well as entirely feasible from the court's standpoint for the district court to continue in session at each place throughout the year. Indeed Civil Procedure Rule 77(a), 28 U.S.C.A. following section 723c,[6] and Sections 9[7] and 10[8] of the Judicial Code, 28 U.S.C.A. §§ 13, 14, would seem to contemplate that this should be the practice.

The effect of the special terms held pursuant to rule of this court remains for consideration. Section 11 of the Judicial Code, 28 U.S.C.A. § 15,[9] provides for the holding of special terms of court at such time as may be ordered by the district judges. Special terms of this court are provided for by our rule 6 which provides: "The regular and special terms of Court are: At Newark, 3d Tuesday in January; 1st Tuesday in April; 2d Tuesday in September and 1st Tuesday in November. At

---

[3] Ex parte Friday, D.C.N.Y., 43 F. 916, 918; Loewe v. Union Savings Bank, D.C. Conn., 222 F. 342; Petition of Thames Towboat Co., D.C.Conn., 23 F.2d 493; Saunders v. Commissioner, 10 Cir., 101 F.2d 407.

[4] Act of February 14, 1913, Ch. 53, 37 Stat. 674.

[5] Act of May 17, 1926, Ch. 311, 44 Stat. 561.

[6] "The district courts shall be deemed always open for the purpose of filing any pleading or other proper paper, of issuing and returning mesne and final process, and of making and directing all interlocutory motions, orders, and rules."

[7] "The district courts, as courts of admiralty and as courts of equity, shall be deemed always open for the purpose of filing any pleading, of issuing and return-ing mesne and final process, and of making and directing all interlocutory motions, orders, rules, and other proceedings preparatory to the hearing, upon their merits, of all causes pending therein. * * *"

[8] "District courts shall hold monthly adjournments of their regular terms, for the trial of criminal causes, when their business requires it to be done, in order to prevent undue expenses and delays in such cases."

[9] "A special term of any district court may be held at the same place where any regular term is held, or at such other place in the district as the nature of the business may require, and at such time and upon such notice as may be ordered by the district judge. Any business may be transacted at such special term which might be transacted at a regular term."

Trenton, 3d Tuesday in January and 2d Tuesday in September. At Camden, 2d Tuesday in May and 1st Tuesday in December." Thus at Newark in addition to the regular April and November terms special terms are required to be begun on the third Tuesday in January and second Tuesday in September (the dates of the commencement of the regular Trenton terms)[10] while at Camden a special term is to be opened on the second Tuesday in May in addition to the regular December term. As we have seen, a term of court automatically expires when a new term is opened at the same place.[11] We think that this is true whether the new term is a regular stated statutory term or a special term held pursuant to standing rule of court. Certainly the only purpose of a special term under Section 11 of the Judicial Code is to transact business which could have been transacted at the regular term had it not previously expired. The opening of a special term of court therefore necessarily negatives the idea that the court is still in session in regular term and consequently must be taken as having the effect of ending the preceding regular term at the place of session if it has not already been adjourned sine die.

We conclude that a regular stated term of this court held at any one of the three places designated by the statute, continues until terminated either (a) by an order of adjournment sine die entered by a district judge, (b) by the commencement of a special term at that place convened pursuant to rule 6, or (c) by the commencement of the next regular stated term at that place.

We accordingly hold that since prior to April 16, 1940, an order had not been entered adjourning the December, 1939, term at Camden sine die and the special May, 1940, term had not then commenced, the December, 1939 term at Camden had not come to an end on April 16, 1940, and that the indictment against the defendants returned by the grand jury on that date was valid.

In support of the view that a term of court at one place is automatically ended by the beginning of a regular term at another place in the district the defendants cite the decisions of the Circuit Court of Appeals in United States v. Parker, 3 Cir., 103 F.2d 857, and in a prior appeal by these defendants, United States v. Perlstein and Paul, supra. We must, therefore, examine these cases to ascertain whether they are authority for the proposition advanced by the defendants.

In the Parker case the defendants entered a plea in abatement based upon the ground that the term of the grand jury had expired before the indictment was found. The grand jury was drawn for the April 1936 term at Newark; on August 7, 1936, the vote on the indictment was taken; on August 17, 1936, the trial judge entered an order directing the grand jury to remain in service during the succeeding term to finish investigations already begun, and on October 19, 1936, which was within the succeeding September, 1936, special term the bill was brought into court. The Circuit Court of Appeals overruled the plea in abatement, saying (page 860 of 103 F. 2d): "In the light of the statute[12] and of the court's order its action in thus completing its business in the succeeding term was entirely lawful." It is clear that the Parker case furnishes no support for the defendants' present contention since the intervention of the special September term required by rule 6 to be convened at Newark had undoubtedly ended the preceding regular April term.

In the previous appeal by these defendants to the Circuit Court of Appeals they argued that the trial court erred in refusing to quash the indictment on the ground that the Camden grand jury did not begin its investigation of the crime with which they were charged until after the date of the order authorizing them to

---

[10] Rule 6 has since been amended so as to eliminate the special terms at Newark.

[11] Cases cited in footnote 3, supra.

[12] Section 284 of the Judicial Code, 28 U.S.C.A. § 421, which provides, inter alia: "The district court may in term order a grand jury to be summoned at such time, and to serve such time as it may direct, whenever, in its judgment, it may be proper to do so. A district judge may, upon request of the district attorney or of the grand jury or on his own motion, by order authorize any grand jury to continue to sit during the term succeeding the term at which such request is made, solely to finish investigations begun but not finished by such grand jury, but no grand jury shall be permitted to sit in all during more than eighteen months."

continue in session after the term. As we have seen, an order had been entered on January 11, 1940, authorizing the grand jury to continue in session *to complete its unfinished business.* This was in conformity with Section 284 of the Judicial Code, 28 U.S.C.A. § 421, which expressly restricts a grand jury thus extended to finishing investigations begun but not finished by it. The Circuit Court of Appeals held that the district court was justified in denying the motions to quash because they lacked verification. In its discussion of the question there presented the court assumed, in the absence of any suggestion by the government to the contrary, that the December, 1939, term of court at Camden ended on January 16, 1940, when the Trenton term began. The question whether that term did not continue until the opening of the special term at Camden on May 14, 1940, was neither argued nor decided.

Reliance is also placed by the defendants upon the action of this court on June 19, 1941 in quashing the indictment in United States v. Enoch L. Johnson, No. 384c, upon a plea in abatement alleging that the grand jury, which was impaneled at the December, 1940 term at Camden, had found the indictment on June 10, 1941 in the April, 1941, term, whereas its life had been extended for the January, 1941, term only and it had therefore, no power to act at the time it returned the indictment. A district judge, prior to the commencement of the January, 1941, term of court at Trenton had entered an order authorizing the Camden grand jury to continue its sessions to complete its unfinished business. The order did not purport to confine the extension to the succeeding term and no similar order was entered prior to the beginning of the regular April term at Newark or the special May term at Camden. It was argued on behalf of the government that the order entered in January empowered the grand jury to sit through any number of terms until its work was concluded, provided only that it concluded its labors within eighteen months. This argument assumed that the Camden term ended in January and the Trenton term in April. This court construed Section 284 of the Judicial Code, 28 U.S.C.A. § 421, to deny to the court power by an order entered at one term to extend the grand jury's

term of service beyond the next succeeding term. We concluded that the extension in January, which was intended to make certain the right of the Camden grand jury to sit during the ensuing January term at Trenton, could not, under Section 284, be construed to authorize that grand jury to sit during the April term at Newark and the special May term at Camden. The December 1940 term at Camden had ended on May 13, 1941, when the special May term began, and we accordingly held that the grand jury was without power to find the indictment against Johnson on June 10, 1941, and quashed the indictment. It will thus be seen that the question now before us was neither argued nor decided in the Johnson case.

■■ It is obvious that our conclusion that stated terms of court may be held at Newark, Trenton and Camden simultaneously makes it possible for three grand juries engaged in the investigation of current matters[13] to be in session in the District of New Jersey at the same time. It may be suggested that this is prohibited by Section 284 of the Judicial Code, as amended, 28 U.S.C.A. § 421, which provides in part as follows: "No grand jury shall be summoned to attend any district court unless the judge thereof, in his own discretion or upon a notification by the district attorney that such jury will be needed, orders a venire to issue therefor. If the United States attorney for any district which has a city or borough containing at least three hundred thousand inhabitants shall certify in writing to a district judge of the district that the exigencies of the public service require it, the judge may, in his discretion, also order a venire to issue for a second grand jury. If the United States attorney for the southern district of New York shall certify in writing to the senior district judge of said district that the exigencies of the public service require it, said judge may, in his discretion, also order a venire to issue for a third grand jury. The district court may in term order a grand jury to be summoned at such time, and to serve such time as it may direct, whenever, in its judgment, it may be proper to do so."

We do not think that the statute was intended to have the restrictive effect suggested. We construe the second and third sentences of the section as referring only

---

[13] As distinguished from grand juries continued to finish investigations begun in prior terms.

to such additional grand juries as are called for service at a single place for holding court and at a single term of court at that place. The significant language of the section is contained in its fourth sentence which authorizes the district court "in term" to summon a grand jury "at such time, and to serve such time as it may direct." Under this provision the court may, at any term, regular or special, and at any time in the term, summon a grand jury to serve for that term.[14] Thus it will be seen that the statute contemplates that there may be a grand jury serving at each term of court, regular or special, which is being held in the judicial district at a given time, but, except as specially permitted, never more than one at the same place of holding court. It follows that this court is authorized to summon a grand jury at each of its terms at Newark, Trenton and Camden to serve, if necessary, during the whole of the term. Consequently the competence of the grand jury which served at the December 1939 term at Camden was not affected by the fact that during its term of service other grand juries may have been in service at Newark and Trenton.

The second ground urged by the defendants in support of their motion in arrest of judgment is that the indictment is invalid because it does not allege the commission of an act to effect the object of the conspiracy with sufficient particularity. Seven overt acts are set out, of which the fifth is typical. It is alleged therein: "That on or about October 15, 1937, the said defendant Benjamin M. Perlstein had a conversation with said John A. Graham." The defendants contend that this information is not enough and that they are entitled to be informed in what particular and in what manner this conversation is in train with or effectuates the object of the agreement or plan. The overt act must be so pleaded, they contend, as to show its relevancy to the plan of the conspiracy.

■ A defendant is entitled to be advised of the nature and the cause of the accusation against him so that he may meet the accusation, prepare for his trial and, after judgment, be able to plead the record and judgment in bar of further prosecution for the same offense.

■ If the indictment gives him that much information his substantive rights have been protected. So tested, we think the defendants were well informed by the indictment of the charge against them. The time and the actor of each alleged overt act are given with particularity. It is alleged in the body of the indictment that the overt acts were done "in pursuance of said unlawful and felonious conspiracy, confederation and agreement, and to effect the objects of the same." If the defendants needed more details they had but to request a bill of particulars and the court would have directed that the government furnish them with the needed information.[15]

In United States v. Polakoff, 2 Cir., 112 F.2d 888, the indictment alleged that the accused conspired to influence and impede the official actions of officers in and out of the United States District Court in order that one Sidney Kafton would receive a sentence of not more than one year and one day. The accused claimed that the indictment should have specified who were the officers that were to be so impeded. In dealing with this contention Judge Learned Hand said: (page 890 of 112 F. 2d): "We do not see why, if the accused were really in ignorance of this detail, they could not have been fully protected by a bill of particulars. Decisions such as Heaton v. United States, 2 Cir., 280 F. 697, and Kellerman v. United States, 3 Cir., 295 F. 796, are of doubtful service today, when objections which do not go to the substance of a fair trial no longer get much countenance."

■ The defendants in this case do not claim that they were in fact ignorant of the relationship of the overt acts to the object of the conspiracy. They could hardly make such a contention since the government had presented all its evidence upon the first trial. As a practical matter the defendants were informed not only as to the nature of the charge which they had to meet but also as to the evidence relied upon by the government to sustain the

[14] McDowell v. United States, 159 U.S. 596, 602, 16 S.Ct. 111, 40 L.Ed. 271.

[15] Bartell v. United States, 227 U.S. 427, 432, 33 S.Ct. 383, 57 L.Ed. 583; Rosen v. United States, 161 U.S. 29, 34, 16 S.Ct. 434, 480, 40 L.Ed. 606; Dur-land v. United States, 161 U.S. 306, 315, 16 S.Ct. 508, 40 L.Ed. 709; Dunbar v. United States, 156 U.S. 185, 192, 15 S. Ct. 325, 39 L.Ed. 390; United States v. Harding, 65 App.D.C. 161, 81 F.2d 563, 567, 568; Shaw v. United States, 6 Cir., 180 F. 348, 352.

charge. They were well informed at the outset of the second trial and could in no way have been prejudiced by the terse allegations of the overt acts.

█ As was said by Mr. Justice Sutherland in Hagner v. United States, 285 U.S. 427, page 431, 52 S.Ct. 417, page 419, 76 L.Ed. 861: "The rigor of old common-law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded. The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' "

█ The lack in the indictment against these defendants, if there is any, is as to detail only and we are of the view that it is at most merely a defect of form. Under such circumstances Section 1025, Revised Statutes, 18 U.S.C.A. § 556, provides that the indictment shall not be deemed insufficient. It reads: "No indictment found and presented by a grand jury in any district or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant." We conclude that the indictment informed the defendants of the nature of the offense charged with sufficient particularity to safeguard their substantial rights and that the motion in arrest of judgment, insofar as it is based upon the claim that the indictment is insufficient, must be denied.

█ We need not pass upon the argument that the indictment is also invalid because it does not charge an offense. This argument was advanced without success by the defendants in their appeal to the Circuit Court of Appeals. Whatever may be the rights of the defendants to relitigate this issue in the court which rendered the decision that decision is binding upon this court as the law of the case.[16]

█ The defendants have assigned numerous errors alleged to have been committed during the course of the trial which they contend were so prejudicial as to require the direction of a new trial. The first alleged error deals with the court's rulings on the admissibility of evidence. Since the defendants have not presented a bill of exceptions we would be justified in refusing to consider these errors.[17] We will, however, consider them in the light of such recollection of the testimony taken at the trial as remains to the writer, who was the trial judge.

█ The conspiracy to obstruct the due administration of justice with which the defendants were charged involved their alleged attempt to protect their co-defendants, Herbert R. Short and Michael Aluise, from implication in the operation of an illicit still which was seized at the Atlantic City garbage disposal plant on October 13, 1937. Myers, a government witness who had been arrested at the still site at the time of the seizure and who had admittedly been represented at his hearing by Perlstein at the behest of Aluise, testified that Perlstein advised him "to keep his mouth shut" if questioned about the installation and operation of the still. Likewise there was testimony which indicated that Perlstein sought out Graham, the lessee of the garbage disposal plant, and represented him in the proceeding brought against him in the state court, advising him not to talk and later advising him to plead guilty, which Graham did. The government's theory was that Perlstein did all this in order to protect Short and Aluise, his real clients and the owners of the still. Perlstein offered himself as a witness in his own defense and testified that his actions were solely those of an attorney representing his clients and that his advice to Myers and Graham was merely to inform them of their constitutional right to refuse to testify if to do so would tend to incriminate them. Perlstein attacked the government's theory of the motivation of his actions as untenable because, as he contended, he did not even know of the existence of the still until after

---

16 Messinger v. Anderson, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152; Reynolds Spring Co. v. L. A. Young Industries, 6 Cir., 101 F.2d 257, 259; Atchison, T. & S. F. Ry. Co. v. Ballard, 5 Cir., 108 F.2d 768, 772; White v. Higgins, 1 Cir., 116 F.2d 312, 317.

17 United States v. Peterson, D.C., 24 F.Supp. 470.

its seizure in October, 1937, when Aluise asked him to represent Myers. Counsel for the government then asked Perlstein on cross-examination: "Did you get permission to put the still in there?" and "Did you tell Bob and Mike [referring to Short and Aluise] that you would get the okey to put that still in the plant?" These questions were allowed over objection and answered by Perlstein in the negative. It seems clear to us that these questions were designed to test the witness's credibility and were admissible as such. The question whether Perlstein's actions were in the course of the legitimate performance of an attorney's duties or for the purpose of concealing from discovery by the government the connection of Short and Aluise with a crime under investigation was directly relevant upon the issue of Perlstein's guilt or innocence of the charge that he conspired to impede witnesses in order to obstruct the due administration of justice.

 In rebuttal counsel for the government called Short who testified that Perlstein acted for him and Aluise in the matter of securing permission from Enoch L. Johnson, a political leader, to operate the still in the city garbage disposal plant as early as April, 1937. The defendants objected to the admission of this testimony and they strongly urge that it was not only inadmissible but highly prejudicial as well. They cite in support of their position numerous cases which hold that testimony is not admissible, to rebut evidence elicited on cross-examination on a matter collateral to the issue. These cases, however, are not in point since Short's testimony was offered, not as proof that Perlstein was guilty of another crime, but solely for the purpose of meeting Perlstein's interpretation of the motive for and character of his representation of Myers and Graham and the advice he gave to them.

Indeed, without the background of the installation of the still in April, 1937, and of the investigation which followed its seizure many of the actions of the reputed participants in the conspiracy to obstruct the due administration of justice are difficult to understand. It was only when the jury was given the clues which this background furnished as to the persons whom the defendants were intending to protect that the apparently uncorrelated acts began to fit into an understandable pattern. It seems to us that the evidence of Short as to Perlstein's previous knowledge of the still was admissible in order to make his subsequent behavior comprehensible. It tended to prove that his own explanation of his dealings with Myers and Graham was untrue and it was admitted by the court solely for that purpose. We are of the opinion that the two questions asked of Perlstein on cross-examination and the testimony of Short offered to rebut Perlstein's answers to these questions were properly allowed.[18]

The defendants contend that the court erred in charging that the rebuttal testimony should be considered by the jury as affecting Perlstein's credibility and as providing a motive for his actions. This contention is disposed of by what we have just said concerning the admissibility of that testimony.

The court's refusal to charge in accordance with Perlstein's eighteenth request was not error since the request as worded was not in harmony with the law of the case as enunciated by the Circuit Court of Appeals in United States v. Perlstein and Paul, supra.

We have examined the remaining assignments of error and find them without merit.

The motions in arrest of judgment and for a new trial are accordingly denied.

---

[18] Scott v. United States, 172 U.S. 343, 19 S.Ct. 209, 43 L.Ed. 471; Black v. United States, 5 Cir., 294 F. 828, certiorari denied 264 U.S. 580, 44 S.Ct. 330, 68 L.Ed. 859; Tam Shi Yan v. United States, 2 Cir., 224 F. 422.