UNITED STATES, Appellee

v

RICHARD A. WILLIAMS, Private, U. S. Marine Corps, Appellant

19 USCMA 334, 41 CMR 334

No. 22,416

March 20, 1970

*Lieutenant Donald B. Brant, Jr.,* JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was *Commander E. M. Fulton, Jr.,* JAGC, USN.

*Captain Patricia A. Murphy,* USMC, argued the cause for Appellee, United States. With her on the brief was *Captain Lester G. Fant, III,* USMCR.

## Opinion of the Court

FERGUSON, Judge:

The accused was convicted, on his plea of guilty, of two specifications of using the United States mails to transmit an obscene and threatening letter to the President (Charge I),[1] and two specifications of absence without leave (Charge II), in violation of Articles 134 and 86, Uniform Code of Military Justice, 10 USC §§ 934 and 886, respectively. He was sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for five years. Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence as extended to a bad-conduct discharge, total forfeitures, and confinement at hard labor for twenty-four months. A board of review affirmed the findings and the sentence as approved by the convening authority. We granted review to determine whether the accused's plea of guilty to Charge I and its specifications was provident.

Subsequent to the return by the court of a guilty verdict, based on the plea, the accused testified under oath, in mitigation and extenuation, as to the facts surrounding the preparation of the letter to the President.[2] He readily admitted that he and two fellow brig prisoners, Binkley and Newman, conceived the idea of writing a letter to the President which they intended to be of such a nature as to get them all discharged from the service. He

---

[1] Specifications 1 and 2 of Charge I, alleged a violation of §§ 1461 and 871, Title 18, United States Code. They were preferred under that portion of Article 134, which provides for the trial of "crimes and offenses not capital," not otherwise mentioned in the Code.

[2] There was but a single letter. The substance of the letter served as the basis for both specifications under Charge I.

**335**

acknowledged writing a portion of the letter in which he renounced his citizenship. Although he did not write the whole of the communication, he was aware of its contents, including the alleged obscenities and the threat against the life of the President. After the letter was signed by each of the participants, sealed and addressed, the accused had a change of heart and attempted to get it back. In response to defense counsel's inquiry, he testified:

"A: I went and seen the Recruit Counsellor down there at the Brig, Sergeant SUMMERS, sir, and requested to have it drawn back, but he said that it was impossible. So the very next morning, Private BINKLEY and myself went to see the Captain and because of Private NEWMAN's name on the outside of the letter, it was impossible for him to give it to us, *so they mailed it*, sir.

"Q: Did they inform Private NEWMAN that he had an opportunity to withdraw the letter?
"A: Yes, sir, they did.

"Q: And what did Private NEWMAN say?
"A: He wanted it sent on, sir.

"Q: Despite the way that you felt?
"A: Yes, sir." [Emphasis supplied.]

Appellate defense counsel contended before this Court that since the accused's testimony in mitigation revealed that he attempted to withdraw from the enterprise before the letter was actually deposited in the mails and so informed his colleagues, his plea of guilty was improvident and should have been rejected by the law officer. Contrariwise, appellate Government counsel argued that the letter, when initially placed in the hands of brig personnel, was in the mails, within the meaning of the statute and thus not recallable and that the accused's later change of heart

did not affect his guilt or the providency of his plea.

Nowhere in the record are the elements of the offense of using the mails to transmit an obscene or threatening letter to the President set forth. In view of the accused's plea, the court was not instructed thereon and when inquiring into the plea, the law officer simply asked the accused, "Do you know the elements of the offenses to which you have pleaded guilty?" When the accused replied, "Yes, sir," nothing further was said with regard to this most important matter.

In United States v Care, 18 USCMA 535, 40 CMR 247 (1969), a majority of this Court held that the law officer's failure to delineate for the accused the elements of the offense and to obtain, on the record, an admission of guilt based on the factual components of the charges and specifications, during his inquiry into the providence of a guilty plea, was error (United States v Chancelor, 16 USCMA 297, 36 CMR 453 (1966)); but not prejudicially so if the record otherwise demonstrated that the accused understood the elements of the offense and his plea of guilty was not improvident.[3] In the case at bar, the law officer's inquiry is similar to that found in *Care*. However, the record reflects that the accused's testimony in mitigation, as quoted above, casts doubt upon his understanding of the factual nature of the offense set forth in specifications 1 and 2 of Charge I.

The accused testified in mitigation that he changed his mind and attempted to retrieve the letter while it was still in the hands of brig personnel and before it was deposited in the United States mail. His request was refused only because the letter bore the name of Private Newman on the outside rather than his name. Newman, according to the accused, declined to withdraw the letter and, accordingly, it was there-

---

[3] For cases tried thirty days after the date of United States v Care, 18 USCMA 535, 40 CMR 247 (August 29, 1969), such an omission will be regarded as prejudicially erroneous. *Care* does not apply to this case as this ac-

cused was tried on April 18, 1969. Cf. United States v Henryes, 18 USCMA 579, 40 CMR 291 (1969); United States v Lish, 18 USCMA 582, 40 CMR 294 (1969).

after deposited in the United States Postal System.

Specification 1, Charge I, alleges, in pertinent part, that the accused did "knowingly and unlawfully use the United States mail for mailing obscene matter." In specification 2, Charge I, he purportedly did "knowingly and willfully communicate a threat against the President of the United States, . . . by depositing in the United States Mail for delivery a letter containing said threat." It is apparent that had the accused pleaded not guilty, it would have been incumbent upon the Government to prove that the letter was in fact deposited in the United States mail, this being an essential element of the charged offense. See annotations to §§ 871 and 1461, Title 18, United States Code. "It is the deposit for mailing that constitutes the offense [of use of the mails for an illegal purpose], and when that is done the offense is complete. Scott v United States, 172 US 343, 43 L Ed 471, 19 S Ct 209 [1899]." Ackley v United States, 200 F 217 (CA 8th Cir) (1912). Failure of such proof beyond a reasonable doubt would necessarily have resulted in a finding of not guilty.

The accused's testimony, unrebutted on the record, raises considerable doubt whether the crime was complete when the accused attempted to withdraw from the criminal venture. His effort to withdraw was timely, if the letter had not yet been deposited in "the United States mail," and his intention therein was effectively communicated to the other parties (his accomplices) to the offense. Clark and Marshall, A Treatise on the Law of Crimes, 7th ed, § 8.11, Countermand or Withdrawal, page 537; People v Brown, 26 Ill 2d 308, 186 NE 2d 321, and cases cited at 186 NE 2d 324.

In their brief before this Court, appellate defense counsel contended that "outgoing mail transferred from prisoners to brig personnel 'has not entered the US Postal System.' Corrections Manual, NAVPERS 15825 Rev. (1963), section 304 (2) (b)." The Government averred that this portion of the Corrections Manual applies only to open mail which is first subject to inspection by the brig mail inspector and then sealed and placed in the United States mail. In this case, they argued, since the letter to the President was one classified in the Corrections Manual as privileged and not subject to being opened or inspected, it was in the same status as those letters which had been already inspected, sealed, and placed in the United States mail.

Use of the United States mail, however, is governed by statute. As Mr. Justice Peckham, writing for the Court in Scott v United States, supra, a case involving larceny of a letter and its contents from the United States mail, stated, at 172 US 350:

". . . It was deposited in a proper letter box, and it was intended that it should be taken and conveyed by defendant, a mail carrier, and his duty as such carrier was to convey it to the station postoffice, and while so being carried it was being conveyed by mail, and was under the protection of the Postoffice Department, and its safety provided for by the statute under consideration."

While, admittedly, postal regulations provide for retrieval of a letter which has been deposited in the United States mail, prior to delivery to the addressee, neither the Captain nor any other brig personnel, referred to in the accused's testimony, has authority to extract a letter therefrom and return it to the sender. Had the letter actually been deposited in the United States mail at the time the accused requested that it not be sent on, return of the letter to Private Newman would have been a violation of the postal laws.

In short, we are compelled to conclude that the accused's testimony was so inconsistent with his plea of guilty as to require invalidation of the findings. Code, supra, Article 45; paragraph 70$b$, Manual for Courts-Martial, United States, 1969 (Revised edition); United States v Thompson, 13 USCMA 395, 32 CMR 395 (1962); United States v Vaughn, 17 USCMA 520, 38 CMR 318 (1968).

The decision of the board of review approving the findings of guilty of specifications 1 and 2 of Charge I is reversed. The record of trial is returned to the Judge Advocate General of the Navy. The Court of Military Review may reassess the sentence on the basis of the remaining findings of guilty or a rehearing may be ordered.

Chief Judge QUINN and Judge DARDEN concur.