**UNITED STATES of America**

v.

**Kevin KELLY.**

**Crim. No. 82–163.**

United States District Court,
E. D. Pennsylvania.

Oct. 6, 1982.

---

Peter F. Vaira, U. S. Atty., Thomas H. Lee, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Mark S. Pinnie, Media, Pa., for defendant.

MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Defendant Kevin Kelly was found guilty by a jury on both counts of a two-count indictment charging him with (1) knowingly and unlawfully possessing a machine gun not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d), and (2) making a machine gun without complying with the requirements of Chapter 53, § 5822 of the National Firearms Act, in violation of 26 U.S.C. § 5861(f). At trial, the government produced evidence on the basis of which the jury found, beyond a reasonable doubt, that the bolt and trigger housing of a UZI semi-automatic weapon were sent to the defendant by a Special Agent of the Bureau of Alcohol, Tobacco and Firearms, and that the defendant sent back to the agent a bolt and trigger housing modified in such a manner that the Agent was able to insert the modified bolt and trigger housing into a UZI semi-automatic gun so that it operated as an automatic weapon.

Defendant has now moved for an arrest of judgment under Fed.R.Crim.P. 34, and for a new trial under Fed.R.Crim.P. 33. For the reasons stated below both motions are denied.

*Defendant's Motion for Arrest of Judgment.*

Defendant seeks arrest of the judgment against him on the ground that the Government failed to allege and prove that he possessed the entirety of parts capable of constructing a completed machine gun. Under Fed.R.Crim.P. 34, judgment may be arrested only if the indictment does not

charge an offense against the United States or if the Court was without jurisdiction of the offense charged. Such a motion must be based on a defect apparent upon the face of the indictment itself, and not upon the evidence or its sufficiency. *United States v. Sisson,* 399 U.S. 267, 280–81, 90 S.Ct. 2117, 2124–25, 26 L.Ed.2d 608 (1970); *United States v. Frezzo Bros.,* 461 F.Supp. 266, 268 (E.D.Pa.1978).

The Court holds, as it ruled in denying defendant's motion to dismiss the indictment, that the indictment was sufficient as a matter of law to charge the offenses of making and possessing a machine gun in violation of 26 U.S.C. § 5861. The indictment states the specific sections of the statute which were violated, gives the approximate dates of the offenses, and gives a brief description of the offenses. Defendant thus had sufficient notice of the offense for which he was charged. *See United States v. Miah,* 433 F.Supp. 259, 263–64 (E.D.Pa.1977). Further, the indictment tracks the language of the applicable statute, and alleges the elements necessary to prove each offense.

It was not necessary for the indictment to describe in detail what portions of the machine gun the Government intended to introduce at trial. *United States v. Curtis,* 520 F.2d 1300, 1302 (1st Cir. 1975). Defendant's contention that the Government's proof at trial was insufficient to make out a violation of the statute is properly raised in a motion for a new trial, and will be discussed below.

*Defendant's Motion For A New Trial*

Defendant moves under Fed.R.Crim.P. 33 for a new trial on the following six grounds: (1) the verdict was against the law as it existed at the time of trial; (2) the Court erred in charging the jury that possession and fabrication of any combination of parts designed and intended for the construction of a machine gun, rather than of all parts necessary to construct a completed machine gun, was sufficient to constitute a violation of 26 U.S.C. § 5861; (3) the Court erred by not charging the jury that proof

that the defendant knew that what he possessed was a firearm within the common meaning of the term was required; (4) the Court erred in allowing the government to introduce evidence of other machine gun modifications performed by the defendant similar to that for which he was charged and for which he was not charged in the instant trial; (5) the Court erred in failing to answer two questions submitted by the jury during its deliberation and reiterating its original charge; and (6) the verdict was against the weight of the evidence.

Defendant's first two contentions are based upon the statutory definition of a machine gun as set forth in 26 U.S.C. § 5845(b), which reads:

The term "machine gun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall include the frame or receiver of any such weapon, any combination of parts designed and intended for use in converting a weapon into a machine gun, and any combination of parts from which a machine gun can be assembled if such parts are in the possession or under the control of a person.

Defendant asserts that under this definition the bolt and trigger housing he possessed and modified did not constitute a "machine gun". Defendant relies upon *United States v. Seven Miscellaneous Firearms,* 503 F.Supp. 565 (D.D.C.1980), and the use of the word "and" in the second sentence of the definition. Defendant argues that possession or control of a "combination of parts designed and intended for use in converting a weapon into a machine gun" does not alone constitute possession or control of a machine gun. Rather, defendant argues, a person must also possess or control a "frame or receiver", as well as "any combination of parts from which a machine gun can be assembled" before he possesses a machine gun within the meaning of § 5845(b).

The Court considered and rejected this argument in denying defendant's motion to dismiss the indictment prior to trial, following a consideration of the statute, its legislative history, and the cases cited by both sides. The Court therefore instructed the jury that under § 5845(b) "any combination of parts designed and intended for use in converting a weapon into a machine gun" constituted a "machine gun" within Congress' definition and was thus a firearm for the purposes of the counts charged in the indictment. The Court adheres to its earlier determination.

In *Seven Miscellaneous Firearms* it was stated that since the statute uses the term "frame or receiver" in the conjunctive with conversion parts and any combination of parts from which a machine gun can be assembled, these terms are "not contemplated in isolation, but together." 503 F.Supp. at 575. *Seven Miscellaneous Firearms* holds that a person must possess a frame or receiver and conversion parts, as well as a combination of parts from which a completed machine gun could be assembled, in order to violate the Act.

This Court finds more persuasive, however, the holdings of the two Courts of Appeals which have considered this issue. In *United States v. Campbell,* 427 F.2d 892 (1970), the Fifth Circuit held that possession and transfer of conversion kits, assembled on trigger housings, designed and intended for use in converting a standard M–1 carbine into a machine gun, constituted a machine gun under 26 U.S.C. § 5845(b). Also, in *United States v. McCauley,* 601 F.2d 336 (8th Cir. 1979), a type 96 machine gun lacking the magazine necessary for automatic firing was held to be a "machine gun" under § 5845(b) because it could be "readily restored to shoot". In neither of these cases was the defendant required to possess all the parts necessary to construct a completed machine gun.

The sentence of the statute upon which defendant places reliance in arguing that a person must have possession or control of a frame or receiver, conversion parts, and a combination of parts from which a machine

gun can be assembled simultaneously in order to have possession or control of a "machine gun", was added to the National Firearms Act by amendments included in the Gun Control Act of 1968, Pub.L.No. 90–618, § 201, 82 Stat. 1234. The principal purpose of this legislation was to "strengthen federal controls over interstate and foreign commerce in firearms." 1968 U.S.Code Cong. and Adm.News 4410, 4411. The Conference report on the legislation stated:

> The present National Firearms Act covers gangster-type weapons such as machine guns, sawed-off shotguns, short-barreled rifles, mufflers and silencers. Under the amendment it would also cover machine gun frames and receivers, so-called "conversion kits" for turning over weapons into machine guns, and combinations of machine gun parts when in the possession of a single person.

Clearly, the word "and" used in this sentence reflects a purpose to include three new categories of weapons within the definition of a machine gun. This purpose is even more evident in the Senate report which discussed the amended definition as it now reads:

> The second sentence is new. It provides three new categories as included within the term "machine gun": (1) the frame or receiver of a machine gun, (2) any combination of parts designed and intended for use in converting a weapon other than a machine gun into a machine gun; for example, so-called conversion kits, and (3) any combination of parts from which a machine gun can be assembled if such parts are in the possession of a person. This is an important addition to the definition of "machine gun" and is intended to overcome problems encountered in the administration and enforcement of existing law. It is intended that the three additional categories be subject to all the provisions of the chapter applicable to serviceable machine guns.

S.Rep.No.1501, 90th Cong., 2d Sess. 45–46 (1968).

Additional support for reading the word "and" in § 5845(b) as incorporating three

separate and individually sufficient definitions of "machine gun" within one sentence comes from a reading of 26 U.S.C. § 5845(a), where "and" is used in a similar manner to include eight separate and sufficient definitions of "firearm" in one sentence. It should also be noted that under defendant's reading of the statute, the first two categories listed in the second sentence of § 5845(b) would be unnecessary since they would necessarily be included in the third. Such a reading is inconsistent with the principle that a court is obliged to "give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979).

Of course, Congress could have used the word "or" in the sentence at issue to indicate that each phrase offered an alternative definition of a machine gun. However, use of the word "and", rather than "or" in this case is clearly meant to include each of the three separate definitions within a single sentence, rather than to set up a single three-pronged definition of a "machine gun". Even in criminal statutes, the words "and" and "or" cannot be given fixed and immutable meanings independent of their context or of the clear intent of the statute. *United States v. Moore,* 613 F.2d 1029, 1040 (D.C.Cir.1979).

*Knowledge Required for a Violation of the Statute*

■ Defendant contends that the Court erred in not charging the jury, as defendant requested, that the government had the burden of proving that the defendant possessed items which he knew to be a firearm within the common sense meaning of the term. The Court instead charged that the government need show only knowing possession of the firearm. The Court charged as follows:

> [A]n act is knowingly done if it's done voluntarily and intentionally, and not because of mistake or accident or other innocent reason. The mere possession of a firearm which is required to be registered and has not been registered is a violation of the laws of the United States. It's not necessary for the government to prove that the defendant knew the weapon in his possession was a firearm within the meaning of the statute or that he knew that registration was required.

A similar instruction was given concerning knowing alteration of parts to make a machine gun.

The instructions used were virtually identical to one approved by the Fifth Circuit in *United States v. Cheramie,* 520 F.2d 325, 329 (5th Cir. 1975). Other cases have also stated that knowing possession of an unregistered firearm is all that is necessary to violate the statute. *United States v. Thompson,* 518 F.2d 534 (8th Cir. 1974); *United States v. Moon,* 492 F.2d 902 (8th Cir. 1974); *See United States v. Decker,* 292 F.2d 89 (6th Cir. 1961). *See also* 2 Devitt and Blackmar, *Federal Jury Practice and Instructions* § 59.04 (1977). The registration requirement is "a regulatory measure in the interest of public safety", *United States v. Freed,* 401 U.S. 601, 609, 91 S.Ct. 1112, 1118, 28 L.Ed.2d 356 (1971), and requires no specific intent or knowledge that the item is in fact unregistered.

Defendant cites several cases which have suggested that a person must be aware that what he possesses is a firearm within the general meaning of the term. *Morgan v. United States,* 564 F.2d 803 (8th Cir. 1977); *United States v. Vasquez,* 476 F.2d 730 (5th Cir. 1973); *United States v. DeBartolo,* 482 F.2d 312 (1st Cir. 1973); *See United States v. Freed,* 401 U.S. 601, 614, 91 S.Ct. 1112, 1120, 28 L.Ed.2d 356 (1971) (Brennan, J., concurring). In none of these cases was a conviction overturned for failure of the government to prove a defendant's knowledge that what he possessed was a firearm, either within the meaning of the statute, or within the general meaning of the term. Further, in the majority of these cases, the discussion of defendant's knowledge that what he possessed was a firearm in a general sense was in the context of a holding that a defendant is not, under the statute, required to know the specific characteristics of a weapon, or that a weapon is actually covered by the statute. *See, e.g., Morgan,* 564 F.2d at 805.

Defendant's argument would have some merit if this case were one involving an act "innocent in itself" from which a person could not be expected to be alerted to the likelihood of regulation. *See United States v. Freed,* 401 U.S. at 608–09 and n. 14, 91 S.Ct. at 1117–18, and n.14. The defendant admitted, however, that the only purpose of the conversion he performed was to convert a semi-automatic firearm into an automatic one, and that at the time he sent the modified parts to the agent he knew these parts were designed and intended to convert a weapon into an automatic weapon and a machine gun. (N.T. 3.47). Where such a dangerous device is involved, as in this case and as in *Freed* (which also involved a firearm under the National Firearms Act), "the probability of regulation is so great that anyone who is aware he is in possession of [the device] or dealing with [it] must be presumed to be aware of the regulation." *United States v. International Minerals Corporation,* 402 U.S. 558, 564–65, 91 S.Ct. 1697, 1701–02, 29 L.Ed.2d 178 (1971). Regulation of such an item without requiring *mens rea* or scienter thus does not involve the substantial due process questions which might be involved in the regulation of a more innocent item. *Id.* The instruction given in this case was thus not erroneous.

*Cross-Examination as to Other Modifications*

■ The defendant argues that the Court erred in allowing the prosecution to question him on cross-examination concerning other modifications of machine guns he had performed, and argues that this evidence was unduly prejudicial. The defendant, who took the stand and testified, stated on direct examination that he had "second thoughts" about performing the conversion, that he had no intention of staying in the business of performing modifications of semi-automatic parts, and that he performed the modification for which he was indicted because of financial difficulties and because the government agent "kept bothering me with phone calls." (N.T. 3.30–31). On cross-examination, following defendant's reiteration of these statements, the government was permitted to cross-examine the defendant concerning other instances in which he had converted the bolt and trigger housings of semi-automatic UZI guns for the purpose of making them automatic weapons. Defendant having opened up this line of inquiry by stating that he was pressured into criminal activity by the Government and reluctant to deal until encouraged by the agent, *United States v. Berry,* 644 F.2d 1034, 1037–38 (5th Cir. 1981), the questioning was both relevant and admissible. *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed.2d 413 (1932). Furthermore, this area of cross-examination was not unduly prejudicial to the defendant, who had admitted that he had placed an advertisement in *Shotgun News* offering to convert semi-automatic UZI's to automatic weapons for the price of $150.

*Court's Response to Questions from the Jury*

■ The defendant asserts that the Court failed to answer two questions submitted by the jury during its deliberation, and erred by thereafter repeating portions of its original charge to the jury. There is no basis whatsoever for this allegation of error. The Court answered both questions both specifically and directly.

The jury's first question read: "Exactly what parts of items are licensed under the National Firearms Registration and Transfer Record? pertaining to (a) ownership? (b) gunsmithing?" The Court in responding noted that "no items, no firearms are licensed under the National Firearms Registration Transfer Record", but that the National Firearms Act did require registration of sawed-off shotguns, silencers, machine guns, et cetera. (N.T. 4.6). The Court also noted that under the Act ownership and gunsmithing were not the tests used to determine the registration requirement; rather, possession was the test. (N.T. 4.7).

The jury's second question read: "How would he register the two parts he received since there are no serial numbers on parts?

This would be after alteration." The Court answered this question by referring to 26 U.S.C. § 5842(b) of the Act which "specifically provides that in the event there is no serial number, you are required to apply to the Secretary of the Treasury and obtain a serial number." (N.T. 4.7).

After answering the jury's questions, the Court then proceeded to repeat portions of its charge relating to the first count of the indictment, since the jury's questions indicated some confusion as to the elements of the offense. The Court's reiteration of its charge was clearly within its discretion. *United States v. Lanni*, 335 F.Supp. 1060, 1084 (E.D.Pa.1971), *aff'd*, 466 F.2d 1102 (3d Cir. 1972); *United States v. Collom*, 614 F.2d 624 (9th Cir. 1978), *cert. denied* 446 U.S. 923, 100 S.Ct. 1862, 64 L.Ed.2d 278 (1979).

*Weight of the Evidence*

■ A motion for a new trial on the ground that the verdict was against the weight of the evidence is directed to the sound discretion of the trial court, which may weigh the evidence and may set aside a verdict and grant a new trial only if it determines that the verdict constitutes a miscarriage of justice. *United States v. Phifer*, 400 F.Supp. 719 (E.D.Pa.1975), *aff'd*, 532 F.2d 748 (3d Cir. 1976). The remedy is to be used only sparingly, however, in circumstances where the evidence is heavily preponderant against the verdict. *United States v. Indelicato*, 611 F.2d 376, 387 (1st Cir. 1979).

■ There is no question that in this case the evidence was more than sufficient to support the jury's verdict and that the verdict was not a miscarriage of justice. The government produced evidence to show that in July and November, 1981 the defendant advertised in the magazine *Shotgun News* that for the price of $150 he would convert a UZI semi-automatic into an automatic weapon. In December, 1981 a Special Agent of the Bureau of Alcohol, Tobacco and Firearms, using an undercover name, sent via United Parcel Service (UPS) the bolt and trigger housing of a UZI semi-automatic, along with a money order payable to the defendant, Kevin Kelly, in the amount of $150 to Kevin Kelly, P. O. Box 91, Concordville, Pennsylvania in accordance with the November, 1981 advertisement. George Dunlap, a UPS driver, testified that he delivered the items to the defendant.

In late February and early March, the Special Agent contacted the defendant three times to inquire about the conversion. On March 20, 1982, the Special Agent received an envelope, bearing defendant's name and post office box number as a return address, which contained an altered bolt and trigger housing. When the Special Agent later put these parts into a semi-automatic UZI, the gun operated as an automatic weapon.

At trial, the defendant admitted that he modified the parts, that the only purpose of the modification was to convert a semi-automatic weapon into an automatic one, and that he returned the parts to the Special Agent knowing that they were designed and intended to convert a weapon into an automatic weapon. The government also introduced testimony of a Firearms Enforcement Officer who stated that in his opinion the modified bolt and trigger housing constituted a combination of parts designed and intended for use in converting a weapon into a machine gun and thus constituted a machine gun as defined in 26 U.S.C. § 5845(b).

Finally, the government produced a certificate from the custodian of the National Firearms Registration and Transfer Record that no record of the firearm existed in the Registry, and that there had apparently been no application by the defendant to make or register the firearm. The government also produced evidence that the tax form required to be filed by any person making a firearm covered by the Act had not been filed by the defendant, nor had the required tax been paid. The evidence was more than ample for the jury to find beyond a reasonable doubt that the defendant was guilty.

For all of the above reasons, defendant's motion for a new trial is denied.