**UNITED STATES of America,**

v.

**Tina Rene TREADWAY.**

**Crim. No. A–CR–90–33.**

United States District Court, W.D. North Carolina, Asheville Division.

Sept. 4, 1990.

---

Thomas J. Ashcraft, U.S. Atty., Jerry W. Miller, Asst. U.S. Atty., Asheville, N.C., for plaintiff.

Stanley D. Young, Asheville, N.C., for defendant.

## MEMORANDUM OF OPINION

RICHARD L. VOORHEES, District Judge.

THIS MATTER is before the Court on motion of the Defendant to arrest judgment. For the reasons hereinafter stated, that motion will be denied. The motion decided here will be the Court's motion for judgment of acquittal.

The Defendant was brought to trial on May 15, 1990, before a jury in Asheville, North Carolina. The jury returned a verdict of guilty on May 16, 1990, under a bill of indictment filed on March 6, 1990. The Defendant claims that the government indicted her under 18 U.S.C. § 472,[1] but proved its case, if at all, under 18 U.S.C. § 510(a)(2).[2] The government contends

---

1. Under the heading "Uttering counterfeit obligations or securities" this statute provides:

 Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

2. Under the heading "Forging endorsements on Treasury checks or bonds or securities of the United States," that statute provides in pertinent part:

 (a) Whoever, with intent to defraud—
 (1) falsely makes or forges any endorsement or signature on a Treasury check or bond or security of the United States; or
 (2) passes, utters, or publishes, or attempts to pass, utter, or publish, any Treasury check or bond or security of the United States bearing a falsely made or forged endorsement or signature shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

that the bill of indictment properly alleges facts which support conviction of the Defendant under 18 U.S.C. § 510(a)(2).

The dispute developed in the following manner. The bill of indictment read:

## THE GRAND JURY CHARGES:

That on or about December 9, 1989, at Asheville, Buncombe County, within the Western District of North Carolina, TINA RENE TREADWAY with intent to defraud, did unlawfully, willfully and knowingly attempt to pass, utter and publish a forged obligation of the United States, that is, a United States Treasury check, number 3508 74006751, DATED MARCH 3, 1989, payable to Phyllis Beard, 3 Longview MHP, Swannanoa, North Carolina, 28778, in the sum of $1,381.00, in violation of Title 18, United States Code, Section 472.

A TRUE BILL
/s/ Vickie L. Willis
FOREMAN
/s/Thomas J. Ashcraft
THOMAS J. ASHCRAFT
UNITED STATES ATTORNEY
/s/ Jerry W. Miller
JERRY W. MILLER
ASSISTANT UNITED STATES ATTOR-NEY

Before jury selection, the Assistant United States Attorney informed the Court and the Defendant for the first time that the indictment contained a technical error in the citation. It should have been to 18 U.S.C. § 510 rather than 18 U.S.C. § 472. Counsel for the Defendant made no formal objection, but refused the government's request to consent in writing to amendment of the cited charging statute.

The Court became concerned that the language of the indictment charging the attempt to pass a "forged obligation of the United States" (language taken from 18 U.S.C. § 472) constituted an essential element different from an attempt to pass a Treasury check bearing "a falsely made or forged endorsement or signature" (language from 18 U.S.C. § 510(a)(2)). The Assistant United States Attorney and counsel for the Defendant were informed of this concern *in camera*, but the Defendant again made no objection to going forward with the trial.[3]

At trial the government introduced evidence tending to show, and from which a reasonable jury could believe beyond a reasonable doubt, that the Defendant attempted to cash a genuine United States Treasury check made out to Phyllis Beard in the amount of $1,381.00, which bore a falsely made or forged endorsement, and that the Defendant did so with an intent to defraud. This evidence would obviously satisfy an indictment phrased in the language of 18 U.S.C. § 510(a)(2). However, no evidence was presented by the government to the effect that the Treasury check in question was anything but a genuine draft issued from the United States Treasury. The question thus arises whether the proof adduced satisfied the "forged obligation of the United States" language used in the indictment.

After the government rested, Defendant made a "motion to dismiss," urging an asserted failure of the government to prove the necessary intent to defraud on the part of the Defendant. Defendant argued moreover that the proof offered by the government "merits a judgment of acquittal." This motion was denied by the Court. Defendant presented her evidence and rested. Defendant did not renew her motion.

At the close of the evidence the Court, faced with the imperative of framing its jury instructions, required the government to elect whether it was pursuing a violation of § 472 or § 510. The government again informed the Court that it sought conviction for a violation of § 510. The Defendant did not object to this classification.

The Court then charged the jury with instructions designed to determine if the

---

**3.** The government chose not to dismiss the indictment and begin again, but proceeded to trial with the indictment at hand and has since re-indicted the Defendant using language taken from 18 U.S.C. § 510(a)(2). *See* Criminal Case No. A–CR–90–162, *United States v. Tina Treadway,* filed July 12, 1990.

jury believed beyond a reasonable doubt that the Defendant had committed acts which would constitute a violation of § 510(a)(2). After deliberations, the jury returned a verdict of guilty. The Court once again informed the government and the Defendant of concern over the validity of the indictment relative to the proof and requested that the issue be addressed in post-trial motions and briefs. On May 23, 1990, the Defendant filed her Motion for Arrest of Judgment, contending that she was not properly indicted for the crime for which she was convicted.

## A. DEFENDANT'S MOTION FOR ARREST OF JUDGMENT

■ A motion for arrest of judgment should be granted where an indictment fails to charge an offense. Fed.R.Crim.P. 34; *Finn v. United States*, 256 F.2d 304 (4th Cir.1958). A motion to arrest judgment may be used to achieve little else, however. "A motion for arrest of judgment may be granted *only* on the grounds that: (1) the indictment or information does not charge an offense; or (2) the court was without jurisdiction of the offense charged." *United States v. Hudson*, 422 F.Supp. 395, 396, n. 1 (E.D.Pa.1976) (emphasis in original); Fed.R.Crim.P. 34. As the Defendant does not attack this Court's subject matter jurisdiction over either § 472 or § 510 offenses, the only inquiry raised by the Defendant's motion, as designated, is whether the indictment charges an offense.[4]

■ The question of whether the indictment charges an offense against the United States is a question of law and may be determined from a reading of the indictment itself. *United States v. Rosenson*, 291 F.Supp. 867, 871 (E.D.La.1968). A motion to arrest judgment "must be based on a defect apparent upon the face of the indictment itself, and not upon the evidence or its sufficiency." *United States v. Kelly*, 548 F.Supp. 1130, 1132 (E.D.Pa.1982).

■ In determining whether the indictment is sufficient on its face, review for an alleged defect is made under a liberal standard. "[T]he practice of fine combing indictments for verbal and technical omissions is no longer countenanced in the courts and ... a substantial compliance with the purpose of an indictment to acquaint the defendant with the offense of which he stands charged, so that he can prepare his defense and protect himself against double jeopardy, is sufficient." *Finn, supra*, at 307, *quoting Hartwell v. United States*, 107 F.2d 359, 362 (5th Cir. 1939). Further, "[an indictment will be] construed more liberally after verdict than before, and every intendment is then indulged in support of the sufficiency." *Id.; see also, United States v. Fogel*, 901 F.2d 23 (4th Cir.1990). Finally, indictments which are crafted to track the language of a statute [5] and which charge each element of an offense are valid. *Fogel*, at 25; *Kelly*, at 1132.

■ In the case presently before the Court the indictment, as filed, alleges on its face all of the elements of an offense against the United States, and, in so doing, tracks the language of a criminal statute.[6]

---

**4.** The Defendant does contend that this Court "was without jurisdiction on account of Defendant being improperly indicted." Defendant's "Brief in Support of Motion to Arrest Judgment," Pleading # 19, p. 6. This makes it clear that the only jurisdictional defect asserted goes to the question of whether the indictment charges an offense.

**5.** The indictment may set forth the offense using the language of the statute itself "but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117–18, 94

S.Ct. 2887, 2908, 41 L.Ed.2d 590 (1974), *quoting United States v. Hess*, 124 U.S. 483, 487, 8 S.Ct. 571, 573, 31 L.Ed. 516 (1888).

**6.** Compare, for example, the language of 18 U.S.C. § 472 with the language of the indictment:

"Whoever, with intent to defraud ... attempts to pass, utter, publish, or sell ... any falsely made, forged, counterfeited, or altered obligation ... of the United States ... [shall be guilty of an offense]."

**18 U.S.C. § 472.**

"[O]n or about December 9, 1989 ... within the Western District of North Carolina, Tina Rene Treadway with intent to defraud, did ...

It is "a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). It does "[contain] the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," in the language of *Hamling, supra.* Because the indictment, as filed, meets all of the requirements for facial validity, it could not be dismissed under a motion for arrest of judgment. The indictment, as filed, is technically sufficient as a matter of law to charge *an* offense, albeit an offense of attempting to pass a counterfeit obligation of the United States under 18 U.S.C. § 472. Thus, the motion in arrest of judgment, as such, must be denied.

It is true, as held hereinafter, that the government's indictment language left out an essential element of the offense described in 18 U.S.C. § 510(a)(2), namely the element of a forged endorsement. But this is not the same as failure to charge an offense altogether. It appears that Defendant has simply mislabeled a motion for judgment of acquittal as a motion for arrest of judgment.

### B. THE COURT'S MOTION FOR JUDGMENT OF ACQUITTAL

Since the offense herein found to have been charged in the indictment is not the one on which the government elected to proceed at trial, and offered evidence to support, the remedy of motion for judgment of acquittal suggests itself, on grounds of fatal variance between indictment and proof.

■ Procedurally, the Defendant has made no motion for judgment of acquittal, as such. Her motion made at the close of the government's evidence might have been deemed to be such a motion; but if so, it was waived when not thereafter made or renewed at the close of the Defendant's evidence. *United States v. Rone,* 598 F.2d 564, 572 (9th Cir.1979); Fed.R.Crim.P. 29. However, the Court's expressed concerns over the sufficiency of the evidence relative to the indictment amounted to such a motion made *sua sponte* on which decision was reserved. Fed.R.Crim.P. 29(a) and 29(b). It will be here decided.

Although the Defendant waived her right to move for a judgment of acquittal, one district court has previously noted that "the Supreme Court has clearly implied that a trial court has the inherent power, if not the duty, to examine the sufficiency of the evidence against a criminal defendant *sua sponte.*" *United States v. Broadus,* 664 F.Supp. 592, 595 (D.D.C.1987). As noted in *Broadus,* other circuits have held that a district court has inherent power to enter a judgment of acquittal and may do so at any time after trial as long as the court has jurisdiction over the action. *Arizona v. Manypenny,* 672 F.2d 761 (9th Cir.1982); *United States v. Giampa,* 758 F.2d 928 (3d Cir.1985). Finally, errors affecting substantial rights may be noticed even if they are not brought to the court's attention. Fed.R.Crim.P. 52(b).

■■ A motion for judgment of acquittal tests the sufficiency of the evidence to support conviction of the offense charged. The test for reviewing the sufficiency of the evidence is whether a reasonable mind could fairly find the defendant guilty beyond a reasonable doubt of the offense charged in the bill of indictment, viewing the evidence in the light most favorable to the government. *United States v. Gibson,* 675 F.2d 825, 829 (6th Cir.1982). A verdict may not be upheld if there is a substantial variance between the offense charged and the proof. The issue is whether the variance affected the substantial rights of the accused. "An accused must be informed of the charges against him so that he can prepare his defense and so that he may be protected against a second prosecution for the same offense. When those standards are met, it is well settled that in order for a variance between indictment and proof to be fatal, the evidence offered must prove facts materially different from those alleged in the indictment." *United States v.*

---

attempt to pass, utter and publish a forged obligation of the United States, that is, a United States Treasury check, number 3508

74006751 ... in violation of Title 18, United States Code, Section 472...."
Bill of Indictment, Pleading # 10.

*Hollinger,* 553 F.2d 535, 548 (7th Cir.1977). "Any variance between indictment and proof which does not modify the elements of the crime charged will not invalidate a conviction unless it prejudices the defendant." *United States v. Odom,* 736 F.2d 104, 118 (4th Cir.1984), *citing United States v. Somers,* 496 F.2d 723, 744 (3d Cir.1974). *See also United States v. Neiswender,* 590 F.2d 1269 (4th Cir.1979) and *United States v. DeBrouse,* 652 F.2d 383 (4th Cir.1981).[7] "Any ... variance which does not affect substantial rights shall be disregarded." Fed.R.Crim.P. 52(a).

In *Somers,* the court undertakes to "trace the decisional law relevant to disparities between proof and indictment." *Somers, supra,* at 743. It then sets forth a two-step analysis. One first determines if there has been a modification in the elements of the crime charged. If so, the inquiry is at an end because the *per se* rule against judicial amendments to the terms of an indictment applies, so as to preserve the shielding function of the grand jury. The cases cited for this proposition are *Ex parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1886), and *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). These cases are distinguished from cases wherein no modification of the elements of the offense are involved, such as *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), and *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). In the latter type of case, the emphasis is on the fairness of the trial and whether there was prejudice to the defendant. The instant case falls under the *Bain* and *Stirone* analysis since the elements of the offense were modified, as explained hereinafter, and the variance must be held, *per se,* to be fatal.

As noted above, the Assistant United States Attorney sought to make an oral "technical modification" of the bill of indictment on the morning the case went to trial, amending the statute cited in the indictment, and moreover contends that, in any event, the "forged obligation of the United States" language is sufficient to charge an offense under § 510(a)(2). The government did not formally make, and the Court did not grant, a motion to amend the indictment.

■ Inconsequential modifications of an indictment are permissible. An insubstantial amendment to an indictment is allowable insofar as it does not alter the essential or material elements of the crime charged. *United States v. Bledsoe,* 898 F.2d 430 (4th Cir.1990).[8] Such technical amendments extend to changing a statute citation in laying the charge. "The mere fact that the indictment, after charging an offense against the United States, recited a section of the Code which was not applicable to the offense charged, is not a ground for discharging the defendant on a writ of habeas corpus." *Landis v. Hill,* 4 F.Supp. 945, 946 (M.D.Pa.1933).[9] Note also:

---

**7.** *Neiswender* cites *Somers* for the proposition that "variance constitutes reversible error *per se* where it alters the elements of the crime charged." *Neiswender, supra,* at 1275 n. 3. In *DeBrouse,* the court concluded that no fatal variance existed in the disparity between dates alleged in an indictment and proven at trial because the variance was not prejudicial and the dates were not essential elements of the offense.

**8.** The elements necessary for a conviction under 18 U.S.C. § 472 are:
(1) an attempt to pass, utter and publish;
(2) a forged obligation of the United States;
(3) with intent to defraud.
The elements necessary for a conviction under 18 U.S.C. § 510(a)(2) are:
(1) an attempt to utter and publish a U.S. Treasury check bearing a falsely made or forged endorsement or signature;

(2) knowledge at the time that the endorsement was falsely made or forged; and
(3) such act was done wilfully and for the purpose of defrauding some person.

**9.** It must be noted that the district court in *Landis v. Hill* allowed a forged endorsement conviction to stand where the indictment erroneously cited the counterfeit obligation statute which preceded § 472. The conviction was affirmed as a forged endorsement charge. However, the indictment in *Landis* was far more extensive than the indictment in the present case and factually made out a charge of forged endorsement by stating, in part:
"Tracy M. Landis ... with intent to defraud the United States, did utter, publish and pass a certain obligation of the United States ... drawn payable to one Eva Smith ... knowing said [obligation] ... *to contain a forged mate-*

"Harmless Error. Error in the citation or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to the defendant's prejudice." Fed.R.Crim.P. 7(c)(3).

 While insubstantial modifications are thus permissible, an amendment may not alter, either by addition or deletion, the charge found in the indictment. "[N]othing can be added to an indictment without the concurrence of the grand jury by which the bill was found." *United States v. Norris*, 281 U.S. 619, 622, 50 S.Ct. 424, 425, 74 L.Ed. 1076 (1930), *citing Ex parte Bain, supra.* Similarly, nothing of substance may be stricken from an indictment once it is returned. "Words that are employed in an indictment that are descriptive of that which is legally essential to the charge in the indictment cannot be stricken out as surplusage." *United States v. Root*, 366 F.2d 377, 381 (9th Cir.1966).

 These cases support a finding that the government's effort to amend the indictment to reflect a charge under § 510(a)(2) fell within the category of insubstantial modifications. Whether the Defendant was tried under an indictment incorrectly citing § 472, or under one amended to cite § 510(a)(2), is inconsequential. She was not prejudiced in either event. She had advance notice by way of pre-trial discovery of the nature of the check to be offered into evidence.

The question remains whether the indictment otherwise can be construed to charge an offense under § 510(a)(2). The government argues that a charge of attempting to pass a Treasury check with a forged endorsement under 18 U.S.C. § 510(a)(2) is properly found in the language of the indictment as filed. The government contends that the indictment "is sufficient to *factually* charge" that the Defendant attempted to utter and publish a U.S. Treasury check bearing a falsely made or forged endorsement. Government's Brief

in Support of the Sufficiency of the Indictment, p. 2, Pleading # 20 (emphasis in original). However, § 510 prohibits the attempt to publish not "a forged obligation of the United States," but a "Treasury check ... of the United States bearing a falsely made or forged endorsement or signature." Thus the indictment alleges a violation of § 510 if and only if "a forged obligation of the United States" includes a "Treasury check ... of the United States bearing a falsely made or forged endorsement" for purposes of giving the Defendant adequate notice of the elements of the offense against which she must defend. If the indictment language passes this test, of course, there would have been no need for the government to try to change to § 510, and jury instructions could have been given under § 472. But, as will be seen, the language flunks this test.

 A forged endorsement of the payee's name on a genuine United States Treasury check is not a "forged obligation of the United States." *Prussian v. United States*, 282 U.S. 675, 51 S.Ct. 223, 75 L.Ed. 610 (1931); *see also, Lewis v. United States*, 8 F.2d 849 (8th Cir.1925). Although the *Prussian* court was not dealing with either § 472 or any of its predecessors, this holding has been specifically extended to § 472, as well as other sections of the criminal code, in other circuits. *Roberts v. United States*, 331 F.2d 502, 505 (9th Cir. 1964); *Webster v. United States*, 59 F.2d 583, 585–586 (8th Cir.1932). This Court does not apprehend, nor does the government supply, any valid reason why this treatment of the term "forged obligation of the United States" should not govern here.

The government has labored in vain to resist this conclusion. It has pointed out to the Court that the *Prussian* court affirmed the conviction of the defendant under the predecessor to 18 U.S.C. § 495. Government's Brief, *supra*, at pp. 2–3. It then goes on to cite twelve cases which demonstrate that § 510 was enacted to close loopholes in § 495 and that the prosecution has

rial endorsement, to wit, the forged endorsement of the depositor, Eva Smith, aforesaid...."

Landis, supra, at 945 (emphasis added).

the ability to prosecute offenders who forge endorsements on Treasury checks under either statute. None of the cases cited, however, support the government's conclusion that § 510 and § 472 are interchangeable where forged instruments are concerned.

The Supreme Court affirmed the conviction of the defendant in *Prussian* under the predecessor to § 495 after first holding that the indictment could not be sustained for charging the forgery of an obligation of the United States. The indictment as drafted in that case charged an offense under a statute (§ 495) which prohibited the forgery of a "writing" for the purpose of receiving money from the United States. It held that a forged endorsement could be such a writing. The court was careful to point out that "[t]he indictment alleges specifically and with certainty the forgery of the endorsement on the draft...." *Prussian*, 282 U.S. at 679, 51 S.Ct. at 225. The indictment itself charged the forging of an obligation of the United States "*by falsely making and forging the name of the payee ... on the back of said draft.*" *Prussian, supra*, at 677, 51 S.Ct. at 224 (emphasis added). In the present case, the indictment is not so specific. It leads one to believe that the whole of the Treasury check was "forged," as if it may have been counterfeit.

Moreover, while it is true that forged endorsements, after *Prussian*, were routinely prosecuted under § 495, these prosecutions took place based upon the "forged writing" or "other writing" portions of that statute and were not based upon indictments alleging only forgery of "an obligation of the United States." *See, United States v. Edmonson*, 792 F.2d 1492, 1494 (9th Cir.1986); *United States v. Cavada*, 821 F.2d 1046, 1047 (5th Cir.1987); *United States v. Jackson*, 805 F.2d 457, 462 (2d

Cir.1986); *Edwards v. United States*, 814 F.2d 486, 490 (7th Cir.1987), *quoting*, S.Rep. No. 225, 98th Cong., 1st Sess. 371 (1983), U.S.Code Cong. & Admin.News 1984, p. 3182.

The Court has noticed in some of the cases cited by the government that the appellate courts have occasionally referred to genuine Treasury checks bearing forged endorsements as "forged Treasury checks." [10] However, these cases did not turn on the distinction that had been clearly laid out in *Prussian* between a "forged check" and a "check bearing a forged signature," and these examples are probably no more than incidents of imperfect phraseology. Even if these lower court cases represented something more than random samplings of inartful language within the opinions, it would not be the place of this Court to ignore clear guidance from the Supreme Court.

 Thus, while the indictment is sufficient on its face to charge *an* offense, the only discernable offense which it charges is an attempt to utter a counterfeit obligation under 18 U.S.C. § 472. The government failed to adduce any evidence at trial that what the Defendant attempted to pass was actually a forged obligation. In fact, it is undisputed that the government put on evidence tending to show that she was attempting to pass a *genuine* obligation of the United States with a forged signature. The holding in *Prussian* compels a finding here that the government's proof of a forged endorsement on an otherwise genuine and valid United States Treasury check varied substantially from the allegation in the indictment, which charges attempted passing only of a forged United States obligation. Applying the reasoning of *Somers, supra*, one finds a *per se* violation of the Defendant's constitutional right to

---

**10.** A conviction under § 495 requires proof that the defendant "circulated a check knowing that it was forged...." *United States v. Price*, 795 F.2d 61, 63 (10th Cir.1986). "[A]n offender who passes a forged Treasury check under $500 could be charged with either a felony under § 495 or a misdemeanor under § 510." *United States v. Jackson*, 805 F.2d 457, 463 (2d Cir. 1986). "After brief negotiations, Williams sold

the agent the forged check...." *United States v. Williams*, 850 F.2d 142, 143 (3d Cir.1988). Note that elsewhere in the decision the Third Circuit clearly states that "[p]rior to 1983 persons passing or uttering Treasury checks with forged endorsements were prosecuted under ... § 495," and emphasizes the "forged writing" language of that statute. *Id.* at 144.

be held to answer only on an indictment of a grand jury. U.S. Const. Amend. V. The essential element for conviction under 18 U.S.C. § 510(a)(2) of a forged *endorsement* was totally lacking from the indictment considered and issued by the grand jury. This is another way of saying that, for purposes of the motion for judgment of acquittal, the evidence produced by the government was insufficient to support a verdict of guilty of the offense charged by the indictment.

Based on the foregoing analysis, the Defendant's motion made when the government rested should have been granted. To deny the motion for judgment of acquittal now would be palpably wrong and would deprive the Defendant of substantial rights. The Court will, therefore, grant the motion.

## C. CONSIDERATION OF NEW TRIAL

Under Fed.R.Crim.P. 29(d), this Court must determine if a motion for a new trial should be granted in the event the judgment of acquittal is vacated or reversed on appeal. In such event, no new trial would be required. As outlined in the factual background set forth in this Memorandum, the government presented evidence which would support a conviction for attempting to pass a Treasury check with a forged endorsement under 18 U.S.C. § 510. The sole basis for granting the motion for judgment of acquittal is the conclusion that a genuine Treasury check bearing a forged endorsement is not within the definition of a "forged obligation of the United States." In addition, the jury charge consisted of instructions designed to require the jury to determine whether the Defendant committed an offense under 18 U.S.C. § 510(a)(2). A copy of the indictment was also given to the jury during its deliberations. Thus, any determination, by reversal or vacation of this opinion, that the indictment sufficiently charges an offense under 18 U.S.C. § 510, would allow the jury's verdict to be reinstated.

## D. CONCLUSION

This Memorandum, therefore, memorializes the Court's decision granting a judg-

ment of acquittal to the Defendant herein as announced in open court on July 6, 1990.

IT IS, THEREFORE, ORDERED that the Defendant's motion to arrest judgment is DENIED and the Court's Judgment of Acquittal filed August 9, 1990, stands.