UNITED STATES of America,
Plaintiff–Appellee,

v.

Erica HILL, Defendant–Appellant.

No. 93–3247.

United States Court of Appeals,
Seventh Circuit.

Argued June 14, 1994.

Decided Nov. 8, 1994.

Barry Rand Elden, Asst. U.S. Atty., Ross O. Silverman (argued), Criminal Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Camille B. Conway (argued), Office of the Federal Defender Program, Chicago, IL, for defendant-appellant.

Before ESCHBACH, COFFEY, and FLAUM, Circuit Judges.

COFFEY, Circuit Judge.

A jury convicted Erica Hill, a former postal employee, of stealing and cashing a United States treasury check from the mail in violation of 18 U.S.C. §§ 510(a) and 1709. The district court sentenced Hill to three years probation on condition that she participate in work release for the first thirty days of probation, and ordered her to make restitution in the amount of the check. On appeal, Hill challenges the sufficiency of the evidence offered in support of her conviction as well as the exclusion of evidence under Fed.R.Evid. 404(b) that she failed to steal "test letters" from the mail. We affirm.

## I. FACTS

In February 1991, Anita Henry filed a federal individual income tax return for the year 1990. One month later, the Internal Revenue Service ("IRS") notified Henry that she would receive a tax refund of $712.87 within six weeks. On May 10, 1991, the IRS in Kansas City mailed a United States treasury check in the amount of $712.87 to Henry at 1170 West Erie Street, Chicago, Illinois 60622. In the ordinary course of the mail, this check would have first arrived at the Main Post Office in downtown Chicago. At the Main Post Office, the check would have been segregated by zip code for delivery through the Wicker Park Post Office. At the Wicker Park Post Office, the check would have been further separated by street address for delivery on carrier route 8.

The treasury check would have arrived at the Wicker Park Post Office on the morning of May 12 or 13, 1991. Since May 12 was a Sunday, the check would not have been processed until Monday, May 13. On May 13, Erica Hill was a mail handler at the Wicker Park Post Office where she was assigned to sort mail by street address for carrier route 8. Hill worked from 6 a.m. at the Wicker Park Post Office to 12:00 p.m. that day. During this time frame, Hill, in the usual course of postal business, would have received Henry's check and sorted it for delivery by a mail carrier. Henry did not receive the check. When Henry called the IRS to inquire about the check, she was informed that the check had been processed and would arrive shortly. During the month of July 1991, Henry received a letter from the IRS notifying her that the check had been cashed at the Manufacturer's Bank in Chicago with an enclosed copy of the negotiated check that allegedly contained Henry's endorsement but where in fact it was in someone else's. Henry stated that she had never been in Manufacturer's Bank nor had she ever authorized anyone to cash the check.

In September 1991, Henry took a copy of the check to the Manufacturer's Bank and showed it to Angelo Mazzoni, a Vice President in the Consumer Services Department of the bank. Mazzoni's initials were inscribed on the back of Henry's check, indicating that he had authorized the cashing of the check. Mazzoni explained that the bank had a policy of cashing checks for postal service employees as a courtesy to the Wicker Park Post Office which was located directly across the street from the bank. The bank cashed checks for any postal employee regardless of whether he or she had an account with the bank. The only requirement was that a bank

officer initial his or her approval on an employee's check before cashing it. If postal employees were in uniform or had previously done business at the bank, no identification was required before a bank officer would authorize the cashing of a check.

Mazzoni could tell from the codes on the back of Henry's check that the check had been cashed at Manufacturer's Bank on May 13, 1991, at teller window no. 7. Mazzoni could also tell from the same codes that the check had been cashed as the 41st transaction of the day, and that the person who cashed the check did not have an account at the bank. Mazzoni obtained the teller tape from teller window no. 7 which showed that on May 13 two of the bank's customers, Mr. Lonski and Mr. Marks, had conducted the 40th and 42nd transactions, respectively.

Mazzoni instructed another bank employee, Audrey Brady, to use the bank's videotape to identify the person who came to teller window no. 7 at 10:34 a.m. between customers Lonski and Marks. The videotape reflected a woman wearing a postal uniform. When bank officials displayed the videotape to supervisors at the Wicker Park Postal Office, they identified Hill. In September 1991, Mazzoni confronted Hill with the bank's videotape and transaction records, and Hill denied cashing the check.

The matter was referred to postal authorities. At that time, Hill was still working for the Wicker Park Postal Office and was responsible for stamping "Return to Sender" on undeliverable mail. On October 8, 1991, postal inspectors placed three "test letters" that were undeliverable in Hill's mail tray containing food stamp coupons, a credit card, and a greeting card. Postal inspectors observed Hill properly handle the "test letters," mark them "Return to Sender," and forward them for further processing.

On March 25, 1993, a federal grand jury returned a two-count indictment against Hill. Count One of the indictment charged Hill with having embezzled a United States treasury check from the mail which had been entrusted to her as a postal employee for delivery in violation of 18 U.S.C. § 1709. Count Two of the indictment charged Hill with having cashed a United States treasury check bearing a falsely made and forged endorsement in violation of 18 U.S.C. § 510(a).

On May 11, 1993, after a two-day jury trial, Hill was found guilty of both counts of the indictment. On August 31, 1993, the district court sentenced Hill to concurrent terms of three years probation on each count of conviction with the first thirty days of probation to be served in a work release program. The court also ordered Hill to pay the Manufacturer's Bank $712.87 in restitution.

## II. ISSUES

On appeal, Hill contends that the prosecution failed to prove beyond a reasonable doubt that she embezzled, forged, and cashed Anita Henry's treasury check in violation of 18 U.S.C. §§ 1709 and 510(a). Hill also contends that the district court improperly excluded evidence pursuant to Fed.R.Evid. 404(b) concerning her failure to steal three "test letters" from the mail.

## III. ANALYSIS

### A. Sufficiency of the Evidence

■ In challenging the sufficiency of the evidence to support her convictions, Hill bears a heavy burden, *United States v. Goines*, 988 F.2d 750, 758 (7th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993), and "'[o]nly where the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict.'" *United States v. Tipton*, 964 F.2d 650, 657 (7th Cir.1992) (quoting *United States v. Redwine*, 715 F.2d 315, 319(7th Cir.1983), *cert. denied*, 467 U.S. 1216, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984)). The standard for determining the sufficiency of the evidence at trial is "whether, after reviewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). When the trier of fact is a jury,

we must "defer to reasonable inferences drawn by the jury and the weight it gave to the evidence." *United States v. Beverly,* 913 F.2d 337, 360 (7th Cir.1990), *cert. denied,* 498 U.S. 1052, 111 S.Ct. 766, 112 L.Ed.2d 786 (1991).

### 1. Count One

To prove that Hill violated 18 U.S.C. § 1709, the government was required to demonstrate that (1) Hill was an employee of the United States Postal Service; (2) the check came into Hill's possession for the purpose of being conveyed by mail; and (3) Hill embezzled the check. 18 U.S.C. § 1709; *United States v. Roberson,* 650 F.2d 84, 87 (5th Cir.), *cert. denied,* 454 U.S. 1100, 102 S.Ct. 675, 70 L.Ed.2d 642 (1981); *United States v. Rodriguez,* 613 F.2d 28, 29 (2d Cir.) (per curiam), *cert. denied,* 446 U.S. 967, 100 S.Ct. 2946, 64 L.Ed.2d 827 (1980). Hill does not dispute that she was employed by the Postal Service at the time of the offense, but argues that the government failed to establish that she ever possessed or embezzled the check.

■ Contrary to Hill's argument, the jury was convinced, as are we, that the evidence established that the check came into Hill's possession on May 13, 1991, in the ordinary course of her postal employment. The evidence also established that Hill was the person who possessed and cashed the check on May 13, 1991. Viewing all the evidence in the light most favorable to the government, a rational jury could have found Hill guilty of postal embezzlement beyond a reasonable doubt.

In her brief, Hill argues that the evidence was insufficient to prove that she possessed and embezzled Henry's check for three reasons. First, Hill points to the absence of fingerprints on the check. Roger Ball, a latent print analyst for the Postal Service, testified that he examined the check and was unable to identify any fingerprints on the check. Ball also testified that people often handle documents without leaving fingerprints. Based on this testimony, a jury could reasonably infer that Hill still handled the check even though she left no prints.

Second, Hill argues that other postal employees had access to the check as it traveled through the mail stream. As the government acknowledges, this was undoubtedly true, but the bank's videotape and records indicated that only Hill could have possessed and cashed the check.

Third, Hill argues that the records from the Wicker Park Post Office did not conclusively establish that she sorted route 8 mail on May 13, 1991. Postal Supervisor Sanders testified that Hill was scheduled to sort route 8 mail on May 13, and that Hill worked from 6:00 a.m. until 12:00 p.m. that day. Based on this testimony, a jury could reasonably infer that Hill did in fact sort route 8 mail on May 13, 1991.

### 2. Count Two

To prove that Hill violated 18 U.S.C. § 510(a), the government had to establish beyond a reasonable doubt that (1) Hill passed, uttered, or published a United States treasury check; (2) the check bore a falsely made or forged endorsement; (3) Hill knew at the time of the passing of the check that the endorsement was falsely made or forged; and (4) Hill passed the check with the intent to defraud. 18 U.S.C. § 510(a); *United States v. Williams,* 850 F.2d 142, 144–45 (3d Cir.1988); *United States v. Treadway,* 748 F.Supp. 396, 401 n. 8 (W.D.N.C.1990). Hill does not dispute that Henry's check was cashed on a forged endorsement, but argues that the government failed to prove that she cashed it.

■ The evidence demonstrated that Hill cashed Henry's check. The records from the bank indicated that the check was cashed at the same time that the videotape showed Hill standing at teller window no. 7. The evidence also showed that Hill knew of the forgery because she was the one who embezzled the check from the mail. Moreover, James Regent, a forensic document analyst for the Postal Service, testified that in his unqualified expert opinion Hill forged the endorsement on the back of the check. Viewing all the evidence in the light most favorable to the government, a rational jury could have found Hill guilty of forgery beyond a reasonable doubt.

## B. Rule 404(b) Evidence

Prior to trial, the government filed a motion in limine to preclude Hill from referring at trial to the fact that she did not steal the three "test letters" from the mail on October 8, 1991. The government objected to this evidence on the ground that specific acts of Hill's good conduct were inadmissible to prove her good character under Fed.R.Evid. 404(b)[1] and were irrelevant to any issue in the case under Fed.R.Evid. 405(b).[2] Hill responded that the "test letters" evidence was relevant under Rule 404(b) to negate her intent to steal and to show that she had an opportunity to steal again and did not.

The district court ruled that Hill's failure to steal the "test letters" in October 1991 was irrelevant to her intent to embezzle Henry's check in May 1991 and hence excludable. The court recognized that the "test letters" incident occurred five months after the charged offenses and one month after officials from the bank confronted Hill about the check in September 1991. The court concluded that by the time Hill was "tested," she knew that she was under suspicion for having embezzled the check and had good reason not to steal the "test letters." The court added that in any event the "test letters" evidence would have been cumulative under Rule 403 since Hill was allowed to elicit from Postal Supervisor Sanders that Hill had previously turned in misdirected checks, credit cards, or food stamps.

 We give special deference to the district court's decision regarding the admissibility of evidence, and reverse only for an abuse of discretion. *United States v. Evans,* 27 F.3d 1219, 1232 (7th Cir.1994); *United States v. Kelly,* 14 F.3d 1169, 1173 (7th Cir. 1994). We conclude that the district court here acted within its discretion in excluding the "test letters" evidence. This evidence was nothing more than classic character evidence offered to prove that Hill had a good character and acted in conformity therewith. Rule 404(b) proscribes the admission of such evidence. Fed.R.Evid. 404(b); *see United States v. Camejo,* 929 F.2d 610, 613 (11th Cir.) (drug conspiracy case; the defendant proffered testimony of prior acts of good conduct for the purpose of negating the issues of intent and opportunity under Rule 404(b); the district court properly excluded this testimony because it was "merely an attempt to portray [the defendant] as a good character through the use of prior 'good acts'" and was thus inadmissible character evidence), *cert. denied,* —— U.S. ——, 112 S.Ct. 228, 116 L.Ed.2d 185 (1991).

In her brief, Hill contends that the "test letters" evidence was admissible for three reasons. First, Hill argues that prior honest acts are admissible to negate criminal intent under Rule 404(b). For support, Hill cites *United States v. Manos,* 848 F.2d 1427 (7th Cir.1988). As the government notes, however, the evidence of honest interactions in *Manos* was offered by the defendant under Rule 405 as a specific instance of his character trait for honesty, and not under Rule 404(b) to negate the defendant's intent. *Manos,* 848 F.2d at 1430 & n. 3.

Second, Hill argues that the "test letters" incident was a subsequent act of good conduct admissible under a "reverse 404(b)" theory to negate her intent to embezzle. *See United States v. Stevens,* 935 F.2d 1380 (3d Cir.1991). Embezzlement is a specific intent crime. *United States v. Rice,* 446 F.2d 1390, 1390 (9th Cir.1971) (per curiam) (specific intent to embezzle is an element of 18 U.S.C. § 1709); *United States v. First,* 600 F.2d 170, 171 (8th Cir.1979) (same). Precedent in this circuit renders evidence of Hill's intent admissible under Rule 404(b) regardless of

---

1. Rule 404(b) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it tends to introduce at trial." Fed.R.Evid. 404(b).

2. Rule 405(b) states: "In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct." Fed.R.Evid. 405(b).

whether she has disputed her intent. *See United States v. Monzon*, 869 F.2d 338, 344 (7th Cir.) ("In cases involving specific intent crimes, intent is automatically in issue, regardless of whether the defendant has made intent an issue in the case."), *cert. denied*, 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989); *United States v. Harrod*, 856 F.2d 996, 1000 (7th Cir.1988) ("[W]hen the crime charged is one requiring a showing of specific intent, 'intent' need not be disputed by the defendant before Rule 404(b) evidence can be introduced."); *United States v. Betts*, 16 F.3d 748, 758 n. 7 (7th Cir.1994) (refusing to reconsider prior case law holding that "when a defendant has been charged with a specific intent offense, Rule 404(b) evidence is admissible to prove his intent even where intent is not expressly disputed") (citing *United States v. Kramer*, 955 F.2d 479, 492–93 (7th Cir.) (Cudahy, J., concurring) (arguing that the issue of intent should always be disputed, regardless of whether the crime is a specific intent offense, for other-crimes evidence to be admitted), *cert. denied*, —— U.S. ——, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992)). Nevertheless, before the evidence is admitted, Rule 402 requires that it be relevant to the matter in issue. Fed.R.Evid. 402 ("Evidence which is not relevant is not admissible."); *e.g. Betts*, 16 F.3d at 757; *Stevens*, 935 F.2d at 1405; *United States v. Burke*, 781 F.2d 1234, 1243 (7th Cir.1985). Given Hill's awareness in September 1991 that she was a suspect in the May 1991 theft of Henry's check, her failure to steal the three "test letters" in October 1991 was only tangentially relevant to whether she intended to embezzle the check five months earlier. *Compare Burke*, 781 F.2d at 1243 ("Evidence that the defendant frequently performs lawful or laudable acts does not often establish that some subsequent act is also lawful or laudable."). The district court therefore was well within its discretion to exclude this evidence.

■ Third, Hill argues that the "test letters" evidence was probative of her character trait for law-abidingness, making it admissible under Rule 404(a)(1), which allows a defendant to offer evidence of a "pertinent trait of character." Fed.R.Evid. 404(a)(1).[3] Hill offers no authority for her argument that law-abidingness is a pertinent character trait for the crimes with which she was charged. Assuming lawabidingness was a pertinent character trait, however, the proper method of proof would have been by reputation or opinion testimony. Fed.R.Evid. 405(a).[4] Specific instances of law-abidingness such as the "test letters" incident would have been admissible only if law-abidingness was an essential element of the charge or defense, Fed.R.Evid. 405(b), and the defendant makes no such argument. In any event, Hill's failure to steal the "test letters" five months after her crimes took place when she well knew she was under investigation for embezzling Henry's check would hardly be probative of her character trait for law-abidingness.

■ Finally, even if the exclusion of the "test letters" evidence by the district court was erroneous, this error was harmless in light of the overwhelming evidence of Hill's guilt. *E.g. United States v. Nelson*, 5 F.3d 254, 256 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 937, 127 L.Ed.2d 228 (1994). The testimony of Hill's supervisor at the Postal Service established that in the ordinary course of the mail Hill would have received Henry's check for sorting on the morning of May 13, 1991. Moreover, the bank's records and videotape showed that Hill cashed Henry's check. Furthermore, the testimony of the forensic document analyst established that Hill was the person who forged the signature of Anita Henry on the back of the treasury check.

---

3. Rule 404(a)(1) states: "(a) Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except: (1) Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same." Fed.R.Evid. 404(a)(1).

4. Rule 405(a) states: "In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct." Fed.R.Evid. 405(a).

## IV. CONCLUSION

Hill's conviction is

AFFIRMED.